NO. 23-1475

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

U.S. BANK N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11,

Plaintiff - Appellee,

v.

MASOUD SHAKOORI-NAMINY,

Defendant - Appellant,

BRENDA SHAKOORI-NAMINY; SAND CANYON CORPORATION; WILMINGTON TRUST, NA, as Successor Trustee to Citibank, N.A., as Trustee for Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed Certificates, Series 2007-SV1; HERITAGE CONCRETE CORP.; FIREPLACE LLC; STEPHEN E. MOTTAU; HALLINAN CAPITAL CORPORATION; SAND CANYON CORPORATION,

Defendants

On Appeal from a Final Judgment Entered After an Opinion and Order Granting A Declaratory Judgment and denying a Motion in Limine and for Sanctions and a Motion to Alter and Amend Judgment
Entered in the United States District Court for the District of Rhode Island

## BRIEF OF APPELLANT
## MASSOUD SHAKOORI NAMINY

John B. Ennis                              February 18, 2024
Rhode Island Bar # 2135
Court of Appeals Bar # 47641
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: (401)943-9230
Fax: (401)679-0035
Email: Jbelaw75@gmail.com

1

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  p. 2

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 3

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  p. 5

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  p. 8

# TABLES OF AUTHORITIES

## CASES

*Brook Village North Associates v. General Electric Company*, 686 F. 2d 66 (First Cir., 1982)                                                                    p. 21

*Rainbolt v. Johnson,* 669 F.2d 767 (D.C.Cir.1981)                                p. 21

*United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981).                                                     P. 21

*See Westmoreland v. Triumph* 71*71 *Motorcycle Corp.,* 71 F.R.D. 192 (D.Conn.1976).                                                                        p. 22

U.*S. Bank Trust v. Jones*, 925 F. 3d 534 (1st Circuit, 2019).
                                                                            p. 6, 24, 25, 26, 35

United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012)                     p. 26

United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992)                    p. 26

*United States v. Vigneau,* 187 F.3d 70, 77 & n.6 (1st Cir. 1999)          p. 26

*FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 16 n.15 (1st Cir. 2010)   p. 13

*Airframes Systems, Inc  L-3 Communications Corporation*  658 F. 3d         p. 29
(First Cir. , 2011)

Kohler v. U.S. Bank Nat. Ass'n, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D.
    Wis. June 21, 2013)                                                    p. 10
.
*Note Cap. Grp., Inc. v. Perretta,* 207 A.3d 998, 1000 n.4 (R.I. 2019)     p. 10

*Pimentel v. Deutsche Bank National Trust Company,* 174 A.3d 740
(R.I., 2017)                                                               p. 11

*NV One, LLC v. Potomac Realty Capital, LLC,* 84 A.3d 800,  (R.I. 2014)    p. 11

 Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC,
    717 F. Supp. 2d 724, 734 (E.D. Livonia Mich. 2010),                    p. 10

*Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163, 166 (3d Cir. 1988)
                                                                           p. 11

*Duxbury v Roberts*  388 Mass 385, 446 NE2d 401(1983)                      p. 13

STATUTES

R.I.G.L§ 6A-3-204                                     p. 5, 8, 10, 13
New York's Uniform Commercial Code section U.C.C. § 3-202        p. 13
.Conn.Gen.Stat.Ann. § 42a-3-202(2) (West 1987)                   p. 14
 N.H.Rev.Stat.Ann. § 382-A:3-202(2) (1961);                      p. 14
 N.J.Stat.Ann. § 12A:3-202(2) (West 1962).                       P. 14

# JURISDICTIONAL STATEMENT

John McNicolas of the law firm of Korde & Associates purportedly on behalf of US Bank, N.A. as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structed Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC 11 ("U.S. Bank") filed a complaint and an amended complaint against Masoud Shakoori-Naminy(:Shakoori") and other defendants seeking the following relief:

(1) Declaratory Judgment that Shakoori has ratified the Note and Mortgage and that he is bound by their terms as amended by a Loan Modification Agreement and that it was binding on him and Brenda Shakoori.

(2) Declaratory Judgment equitably assigning the Mortgage to U.S. Bank nunc pro tunc as of October 1, 2003, or alternatively as of December 15, 2008 or alternatively as of February 22, 2013.

(3) Costs and attorney fees

On April 4, 2022 and April 18, 2022 a Bench Trial was heard on only the Equitable Assignment Claim of the Plaintiff. On November 16, 2022, Judge Smith issued Findings of Fact and Conclusions of Law and on November 16, 2022 entered a Judgment for Plaintiff.

On December 14, 2022, Shakoori filed a Motion for a New Trial and to Alter or Amend the Judgment.

On May 3, 2023, Judge Smith issued a Memorandum and Order denying the Motion for a New Trial and the Motion to Alter or Amend the Judgment.

On May 27, 2023 Shakoori filed a Notice of Appeal. In accordance with FED. R. App. Pro. 4(a) and paid the requisite filing fee. This appeal is from a final judgment that disposes of all parties claims by ordering a sale of the property. Consequently, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. 191.

## STATEMENT OF THE ISSUES

(1) The Appellee failed to file a Disclosure Statement pursuant to the original Fed. R. Civ P. 7.1 or Fed. R. Civ P. 7.1 as amended. This raises serious questions about the jurisdiction of the District Court.

The Appellant contends that the Trial Court committed error by entering Judgment for the Plaintiff on its Declaratory Judgment complaint for an Equitable Assignment of the mortgage and by denying the Motion for a New Trial and to Alter or Amend the Judgment.

(2) The Appellant contends that the Trial Court committed error by misapplying R.I.G.L. 6A-3-204 finding that the allonge did not have to be affixed to the

promissory note when the signature on the allonge was placed.

(3)  The Appellant  contends that the Trial Court committed error by disregarding

uncontroverted  evidence in the record indicating that the allonge was not affixed

to the  promissory note when the purported signature on the allonge was made.

(4)   The Appellant contends that the Trial Court committed error by admitting into

evidence  exhibits propounded by the Plaintiff's witness due to a misapplication

of the Best Evidence Rule (FRE 1002 and due to the witnesses inability to provide

any foundation for the these records of a prior service as required by US Bank v

Jones.

(5)     The Appellant contends that the Trial Court committed error  by not

sanctioning the Appellee for discovery violations and by permitting the Appellee to

present evidence which rebutted facts established by the unanswered Request for

Admissions

### STATEMENT OF THE CASE

Appellee filed a Complaint for a Declaratory Judgment (App P. 417 and an

Amended Complaint (App. P. 433).   The relevant exhibits to the Amended

Complaint were Exhibits 3 (App P. 451), 4 (App p. 475), 13 (App p. 500), 14 (App

p. 502), 23 (App p. 504) and 24 (App p. 507).Appellant answered the Amended

complaint (App 509). Appellant served Requests for Admissions, Interrogatories

and Requests for Production. These were disregarded by the Appellee until the eve of trial and no response to the Request for Admissions were served, Nor was a Motion filed to remove the admissions at any time. As a result Appellant filed a Motion in Limine and for Sanctions referencing the failure of the Appellee to comply with its discovery obligations(App. P. 63). The Trial Court did not grant the Motion for Sanctions and Appellee was permitted to present evidence in contrary to its untimely answers to interrogatories and responses to requests for production and which asserted facts contrary to those deemed admitted by the failure to respond to the Requests for Admissions. The most significant Admissions which the Appellant was permitted to rebut was the admission that the Trust did not exist and that US Bank was never trustee for this nonexistent trust. The Appellant presented a witness, Howard Handville, whose testimony did not satisfy the Best Evidence Rule and the business records exception to the hearsay rule. The Trial Court denied the Motion for Sanctions and granted the Declaratory Relief the Appellee sought, namely an equitable assignment of the mortgage to the nonexistent trust. There was no finding as to the grantor of the equitable assignment due to the Court's finding that the note was transferred to the nonexistent appellant contrary to the uncontroverted evidence that the promissory

note signed by the Appellant dated July 16, 2003 and the allonge dated July 16, 2003 were not affixed when the allonge was signed on July 16, 2003.

## SUMMARY OF THE ARGUMENT

Shakoori initially notes the failure of US Bank to comply with Fed R. Civ P. 7.1, which would support the jurisdiction of the District Court to hear this diversity case. The

## ARGUMENT

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY MISINTERPRETING THE CLEAR, CONCISE PLAN LANGUAGE OF R.I.G.L. 6A-3-204 AND ERRONEOUSLY FOUND THAT THE NOTE HAD BEEN NEGOTIATED TO THE APPELLANT

The first of these manifest errors of law was the Trial Court's analysis of R.I.G.L. 6A-3-204, which specifically states:

**§ 6A-3-204. Indorsement.**

**(a) "Indorsement" means a signature,** other than that of a signer as maker, drawer, or acceptor, **that** alone or accompanied by other words **is made on an instrument for the purpose of (i) negotiating the instrument**, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of

the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. **For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument**.

**(b)** "Indorser" means a person who makes an indorsement.

**(c)** For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument.

**(d)** If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

The clear language of this statute is that for a note to be transferred to a party by the originator of the loan, Option One Mortgage Corporation ("Option One"), the originator had to endorse the note by signing the note, either in blank or to a specific party.  However the analysis does not end at that point.   The statute when parsed properly, clearly states:

**"Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument,**

The note to be endorsed by a signature on a  piece of paper  affixed to the note when the signature was made.

9

**For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument**.

No testimony was presented by US Bank, which indicated that the so-called allonge of Mary Conway, dated July 16, 2003 was affixed to the note, which was also dated July 16, 2003, when her signature was made. No testimony was presented by the US Bank's witness whether the allonge was affixed to the note signed by the Defendant on July 16, 2003. In fact the evidence presented was that the note was in the possession of the closing attorney on July 16, 2003 and was not transmitted to Option One on July16, 2003.   Thus it could not have been affixed to that note on that date when her signature was purportedly made.

This Court made a manifest error of law in its analysis of this transaction aby disregarding the statutory mandate for the paper which contains the signature to be affixed to the note  in order to transfer by negotiation. The Trial Court made an error of law by stating:

"The Court's independent research identifies no [Rhode Island] or [First] Circuit authority establishing the method of attachment necessary to create an effective [i]ndorsement" by allonge, _Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 717 F. Supp. 2d 724, 734 (E.D. Livonia Mich. 2010),_ and identifies no authority establishing when the allonge must be attached to the note to create an effective indorsement. Regardless, even if the allonge was not physically attached to the note at or soon after execution, courts faced with similar questions have held that so long as "information on [the] allonge indicates an intent to serve as an [i]ndorsement of the . . . note," the indorsement is

effective. [Kohler v. U.S. Bank Nat. Ass'n, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D. Wis. June 21, 2013)](). Where "the allonge[] presented to the Court w[as] attached to the [n]ote" and where the allonge makes unambiguous reference to the note, "given the clear intent that the [n]ote and [a]llonges were to be physically attached, the evidence is insufficient to invalidate the [i]ndorsement[]." [Livonia Prop. Holdings, 717 F. Supp. 2d at 734]() (applying Michigan statute identical in relevant part to R.I. Gen. Laws § 6A-3-204(a)).

Here, the allonge was attached to the original note that was presented to the Court, and the allonge references the note by listing the borrower's name, loan number, property address, loan amount, note date, and servicing number. See PXC. Therefore, the evidence presented by Plaintiff is sufficient to validate the indorsement.

However this Court disregarded *Note Capital Group. Inc.  v Perretta,* 207 A. 3d 998, 1000 n.4 (R.I., 2019). In this case and two other Rhode Island cases, the Supreme Court referenced an allonge by its definition in Black's Law Dictionary:

An allonge is "[a] slip of paper sometimes attached to a negotiable instrument **for the purpose of receiving further indorsements** when the original paper is filled with indorsements." Note Cap. [Grp., Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019)]() (quoting Black's Law Dictionary 92 (10th ed. 2014)).

The Supreme Court had made the same analysis in *Pimentel v. Deutsche Bank National Trust Company,* 174 A.3d 740 (R.I., 2017), stating:

[4] "An `allonge' is `[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements.'" *[Moura,]() 90 A.3d at 853 n. 1* (quoting *[NV One, LLC v.]()*

*Potomac Realty Capital, LLC,* 84 A.3d 800, 803 n. 4 (R.I. 2014)) and Black's Law Dictionary 88 (9th ed. 2009)).

In all of these cases the Rhode Island Supreme Court clearly defined allonge as a paper attached to a negotiable instrument for the purpose of receiving further endorsements when the original paper is filled with indorsements.   The term :"for the purpose of receiving further endorsements" speaks of an indorsement on the allonge which has been affixed to the note in a previous time. Shakoori  made this argument at trial which was rejected by the Trial Court.

Cases from other jurisdictions support Shakoori's position  that for an endorsement to be effective the signature must be on  a paper affixed to the note when the allonge was executed.

 New York's Uniform Commercial Code section U.C.C. § 3-202(1) states, in relevant part, that "negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order, it is negotiated by delivery with any necessary endorsement. . . ." The next subsection, U.C.C. § 3-202(2), requires that an endorsement "be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto so as to become a part thereof." Indeed, under U.C.C. § 3-201(3), "negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee

is the owner."[1]  Further, under New York law the rule is that "Without an indorsement a transferee cannot be a holder."        The operative section of New York's UCC (cited as CLS UCC § 3-202(2)) requires indorsement on the instrument itself "or on a paper so firmly affixed thereto as to become a part thereof" in order to effectuate a valid assignment of the entire instrument."[2]  The commentary to this section of New York's UCC lists as authority cases following the same proposition of law from throughout the Country.  These cases stand for such basic propositions as "assignment of vendor's lien note, without endorsement upon instrument itself, was not in compliance with provisions of UCC § 3-202(2) or commercial practices governing such transaction."[3]  The official commentary also cites for a controlling proposition of law this holding regarding allonges "Document purporting to transfer and assign promissory note which was never attached to note did not serve as effective endorsement of note under UCC § 3-202(2).

    A Massachusetts decision relied upon in the New York commentary held that "that payee's signing of instrument that assigned note did not constitute indorsement of note under UCC § 3-202(2) because assignment instrument was not

---

so firmly affixed to note as to be part thereof." *Duxbury v Roberts* 388 Mass 385,

446 NE2d 401(1983). The Massachusetts UCC for negotiable instruments is

similar to Rhode Island UCC 3-204, In *Duxbury,* the Court held:

To have a negotiation of an instrument payable to order, the instrument must be delivered with any necessary indorsement. G.L.c. 106, § 3-202 (1). "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." G.L.c. 106, § 3-202 (2), as appearing in St. 1957, c. 765, § 1. In this case Baines did not sign the note when he transferred it to Duxbury. Rather, he signed only the document entitled, "Partial Assignment of Note and Mortgage." His signing of this document does not constitute an indorsement of the note because it was not "so firmly affixed thereto as to become a part thereof." Therefore, Duxbury did not become a holder or a holder in due course.

This indicates that the paper/allonge must be affixed to the note when the

endorsement is made.

In *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 168 (3d Cir. N.J.

1988) the Third Circuit held:

"the unanimity of the courts in cases where the signature is separate from the instrument can be explained by a judicial perception that it is sound policy to require the indorsement to be on the instrument.

In *Madison,* The Court noted:

The district court acknowledged that the use of a separate, unattached sheet of paper to carry the indorsements failed to comply with Uniform Commercial Code section 3-202(2), which reads: "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Conn.Gen.Stat.Ann. § 42a-3-202(2) (West 1987); N.H.Rev.Stat.Ann. § 382-A:3-202(2) (1961); N.J.Stat.Ann. § 12A:3-202(2) (West 1962).

Thus contrary to the Trial Court's erroneous analysis, the Third Circuit properly

interpreted the UCC requirement that the endorsement must be written on a paper

affixed to the note to thereby become a part of the note. New York has the firmly

affixed  provision of the former section of the UCC, which Rhode Island at one

time had.  There is no distinction in Rhode Island commercial law between firmly

affixed or affixed as the requirement of the paper being affixed to the note when

the signature on the paper/allonge is made.

The Ohio Court of Appeals similarly interpreted its UCC in the same

manner in US Bank Trust National Assn v Phann, 220 NE 3rd 1001( Ohio App,

2023), in which the  Court held:

{¶ 22} An allonge is a method of endorsing a note and is defined as "[a] slip of
paper sometimes attached to a negotiable instrument for the purpose of receiving
further indorsements when the original paper is filled with indorsements."
(Citations omitted) *Courthouse Crossing Acquisitions,* 2d Dist. Montgomery,
2017-Ohio-9231, 101 N.E.3d 1243, at ¶ 78. In general, "[t]he paper must be
affixed to the instrument in order for the signature to be considered part of the
instrument." *HSBC Bank USA v. Thompson,* 2d Dist. Montgomery No. 23761,
2010-Ohio-4158, 2010 WL 3451130, ¶ 66. "The use of an allonge to add
indorsements to an instrument when there is no room for them on the instrument
itself dates from early common law." *Id.* at ¶ 56, citing *Southwestern Resolution
Corp. v. Watson,* 964 S.W.2d 262, 263 (Tex. 1997).

In the case of *In Re; Weisband*,  B.R. 427 B.R. 13, 15 (Bankr D. AZ, 2010)
the Bankruptcy Court held that for an endorsement by allonge the paper had to be
affixed to the note when signed:

However, for the Endorsement to constitute part of the Note, it must be on "a paper affixed to the instrument."

These cases and all the UCC versions in the country refer to the necessity of indorsements to be made on promissory notes or on papers(referred to as allonges) affixed (or in some states firmly affixed) to the note. The simple language of the Rhode Island (and other) statutes indicates that the endorsement is an action taken to transfer the note by negotiation pursuant to UCC 3-204. The signature which reflects this action must be on the note, which is easy to prove. This case however involved the second part of the statute, namely that the endorsement can only be made on a paper affixed to the note/instrument. The statute in no way contemplates that negotiation can be effective if a signed allonge is later affixed to the note. There is no language in the UCC which permits negotiation and transfer in this manner. Thus the Trial Court seriously erred in finding that the Appellee was the holder of the note.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING US BANK TO PRESENT EVIDENCE CONTRARY TO FACTS ESTABLISHED BY US BANK'S FAILURE TO RESPOND TO REQUEST FOR ADMISSIONS

FRCP 36 sets forth the standard for Requests for Admissions:

(b) EFFECT OF AN ADMISSION; WITHDRAWING OR AMENDING IT. A matter admitted under this rule is conclusively established unless the court, on motion, permits the

admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

The following are Request for Admissions  which US Bank did not timely respond

to and to which it did not move to be allowed to withdraw before Trial or at any

time. Thus none of these Admissions can be controverted:

1. On December 15, 2008 , Option One was not owed any indebtedness under the Defendant's note.

2. On December 15, 2008 Option One did not own Defendant's note.

3. On December 15, 2008 Option One did not own Defendant's mortgage.

4. On December 15, 2008, La Salle Bank National Association as Trustee for Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11("LaSalle as Trustee" did not purchase Defendant's Mortgage from any entity.

5. On December 15, 2008, La Salle Bank as Trustee did not purchase Defendant's note from any entity.

6. La Salle as Trustee did not provide any consideration to any entity on December 15, 2008.

7. No entity with the name of Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11has ever existed.

8. La Salle Bank, National Association was never the trustee for

Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11.

9. The purported assignment referenced as Exhibit 5 to the complaint was not signed by Linda Green.

10. The purported witness to the purported assignment referenced as Exhibit 5 to the complaint was not signed by Tywanna Thomas.

11. The purported notarization to the purported assignment referenced as Exhibit 5 to the complaint was not signed by Bailey Kirchner.

12. Exhibit A is a genuine and authentic copy of a complaint filed by AHMSI against DocX, LLC and Lender

13. Lender Processing Services, Inc. ("LPS") was the parent company of DocX, LLC.

14. Linda Green was never an officer of AHMSI.

15. Exhibit B is a genuine and authentic copy of a Consent Order of the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Comptroller of the Currency, the Office of Thrift Supervision, Lender Processing Services, Inc., DocX, LLC and LPS Default Solutions, Inc., dated April 13, 2011.

16. Option One did not own Plaintiff's mortgage on July 15, 2011.

17. On March 18, 2009, an affidavit was filed in the United States Bankruptcy Court for the Eastern District of Louisiana in case number 07-11862.

18. Exhibit C is a genuine and authentic of the affidavit referenced in Request for Admission 17.

18. The original of Exhibit C was signed by Dale Sugimoto.

19. Dale Sugimoto on March 18, 2009 was the President of Sand Canyon.

20. On March 18, 2009 Sand Canyon did not own any residential real estate mortgages.

21. On July 15, 2011 Option One did not own any residential real estate mortgages.

22. On December 15, 2008 Option One did not own any residential real estate mortgages.

23. On July 15, 2011, Sand Canyon did not own any residential real estate mortgages.

24. On December 15, 2008 Sand Canyon did not own Defendant's mortgage.

25. On December 15, 2008 Sand Canyon did not own Defendant's note.

26. La Salle Bank as Trustee did not provide any consideration to Sand Canyon for Defendant's note on July 15, 2011.

27. La Salle Bank as Trustee did not provide any consideration to Sand Canyon for Defendant's mortgage on July 15, 2011.

28. La Salle Bank as Trustee never purchased Defendant's mortgage from Sand Canyon at any time.

29. La Salle Bank as Trustee never purchased Defendant's note from Sand Canyon at any time.

30. La Salle Bank as Trustee did not provide any consideration for Defendant's mortgage to Sand Canyon on July 15, 2011.

31. Exhibit 6 to the complaint was not signed by an officer of Sand Canyon.

32. Tonya Hopkins was not an officer of Sand Canyon on July 15, 2011.

33. Tonya Hopkins was an employee of AHMSI on July 15, 2011.

34. Tonya Hopkins did not sign the purported assignment dated July 15, 2011.

35. La Salle Bank National Association did not exist as an entity on February 22, 2013.

36. La Salle Bank National Association merged with Bank of America, N.A. on October 17, 2008.

37. On February 22, 2013, La Salle Bank National Association no longer existed as an entity.

38. On February 22, 2013 La Salle Bank as Trustee did not own Defendant's mortgage.

39. La Salle Bank as Trustee never granted a power of attorney to Homeward Residential, Inc., authorizing it to sign an assignment of mortgage from La Salle Bank as Trustee to U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 on February 22, 2013.

40. U.S. Bank National Association was never a Trustee for an entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

41. There is no such entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC1.

42. Pamela Stoddard was not an officer of Homeward Residential on February 22, 2013.

43. Pamela Stoddard was never an officer of Homeward Residential on February 22, 2013.

44. Pamela Stoddard was an employee of Security Connections, Inc. on February 22, 2013.

45. Pamela Stoddard did not sign the purported assignment dated February 22, 2013.

The Amended Complaint requested that the following relief be granted:

(2) Declaratory Judgment equitably assigning the Mortgage to U.S. Bank nunc pro tunc as of October 1, 2003, or alternatively as of December 15, 2008 or alternatively as of February 22, 2013.

The Trial Court committed error by not accepting these admissions as binding, particularly number 7 which established that the Plaintiff Trust did not exist, number 8 that La Salle Bank National Association was never the trustee for this nonexistent entity, number 40 that US Bank was never trustee for this nonexistent entity and number 41 that there is no such entity named Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC1.

The case law is clear that Plaintiff cannot undo these admissions, nor has it made any attempt to do so. The case law in the First Circuit and elsewhere is clear, these admissions bind the Plaintiff. In *Brook Village North Associates v. General Electric Company*, 686 F. 2d 66 (First Cir., 1982) this Court reversed the Trial Court for allowing a withdrawal of an admission at trial on Motion of the party

bound by the admission. The Court noted the basis for the rule, the procedure and standards for removing admissions and the different standard at trial:

Under Rule 36 in its present form (the rule was amended in 1970), if a party fails timely to answer a request for admissions, the requested items are deemed admitted. Any matter thus admitted under the Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. And courts have not hesitated in appropriate cases to apply the sanction of Rule 36 to material facts that conclusively establish or preclude a party's claim. *See, e.g., Rainbolt v. Johnson,* 669 F.2d 767 (D.C.Cir.1981); *United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981).

The instant case poses the question of the discretion of a district court to permit withdrawal or amendment of an admission by default once trial has commenced. In general, the standard for being relieved of a failure to respond in a timely fashion to a request for admissions is permissive: a court may allow withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Fed.R.Civ.P. 36(b). The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions. *See Westmoreland v. Triumph* 71*71 *Motorcycle Corp.,* 71 F.R.D. 192 (D.Conn.1976).

The Rule understandably imposes a more restrictive standard, however, on the granting of a request to avoid the effect of an admission once trial had begun. Rule 36(b) specifies that the court can permit withdrawal or amendment of admissions "[s]ubject to the provisions of Rule 16 governing amendment of pre-trial order." Rule 16 authorizes the conduct and defines the contours of a conference before trial. "The chief purposes of the pre-trial conference are to define and simplify the issues, to lessen surprise at trial and the risk of judicial error, to conclude stipulations on matters of evidence, and to promote settlements." 3 J.

Moore, *Moore's Federal Practice* ¶ 16.03 at 16-6 to 16-7 (2d ed. 1982) (footnote omitted). To give effect to matters resolved at conference, Rule 16 provides for the court to make an order "which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreement of counsel." The pre-trial order, once entered, controls the subsequent course of action. "No proof need be offered as to matters stipulated to in the order, since the facts admitted at the pretrial conference and contained in the pre-trial order stand as fully determined as if adjudicated at the trial." 3 J. Moore, *supra,* ¶ 16.19 at 16-40 to 16-41 (footnote omitted). The order can be modified at trial, but only "to prevent manifest injustice." Thus, Rule 16 by its terms sets a higher threshold for a trial judge to exercise his discretion to avoid the force of admissions under Rule 36 once trial has begun.

The district court in the instant case appears to have disregarded the existence of this higher threshold for opening up admissions after commencement of trial.

At no time, did Plaintiff file a Motion to withdraw these admissions. The

Defendant raised this issue on the first day of trial as indicated by the Transcript:

And I would specifically present to the Court Request for Admission Number Seven which states that no entity within the name of Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 has ever existed. That is an established fact which is the name of the plaintiff in this case which is seeking relief.

Request for Admission Eight, which is a fact accepted as true, deemed true, pursuant to Federal Rule of Civil Procedure 36, is that LaSalle Bank National Association was never the trustee for Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

Request for Admission Forty, which is deemed admitted, which is very crucial: U.S. BankNational Association was never a trustee for any entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

And Request for Admission Number Four, there is no such entity named Structured Asset Investment Loan Trust,Mortgage Pass-Through Certificates, Series 2003-BC11.

Now, as a result, your Honor, by virtue of that, my brother indicated, he's the attorney for this trust, it has been deemed admitted that this trust does not exist. So I would suggest that the plaintiff cannot  proceed under the name it's proceeding under because it doesn't exist as a matter of law and fact.

Defendant's Requests for Admissions established that these were conclusive facts and Plaintiff could not at the last minute in trial without a Motion ask the Court to not consider these Admissions because they were not true. This defeats the purpose of the rule and is prejudicial to the Defendant who relied on the admissions. Defendant also had   had filed a  Motion in Limine and for Sanctions pursuant to Fed. R. Civ. Pro. 37.

## THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE PROPOUNDED BY APPELLEE THROUGH ITS WITNESS HOWARD HANDVILLE

The Court erred by admitting their loan documentation exhibits into evidence despite they inability of the purported business records witness to authenticate these records and the refusal of the Plaintiff to provide them until the eve of trial, thus further prejudicing the Defendant.  The standard for admission of purported business records  is set forth in U.*S. Bank Trust v. Jones*, 925 F. 3d 534

(1st Circuit, 2019). *Jones* mandates that the testimony of Howard Handville did not verify anything about the boarding or the verification of the records of Homeward Residential (formerly American Home Mortgage Servicing, Inc., This corporation was not the original American Home Mortgage Servicing, Inc., the original servicer, which filed a Chapter 11 Bankruptcy Petition on August 6, 20007 in case number 07-11050 in the United States Bankruptcy Court for the District of Delaware, of which this case can take judicial notice. This mortgage loan has been serviced by five entities:

(1) Option One Mortgage Corporation

(2) The first American Home Mortgage Servicing, Inc. until its bankruptcy on August 6, 2007.

(3) The second American Home Mortgage Servicing, Inc. from its creation on September 6, 2007 until its name change of Homeward Residential, Inc. on May 31, 2012 as reflected in the record of the Rhode Island Secretary of State, of which the Court can take judicial notice.

(4)     Ocwen Loan Servicing, LLC from March 1, 2013 to June 1, 2019.

(5) PHH Mortgage Services from June 1, 2019.

This witness could not explain how the records of Homeward/AHMSI regarding this loan were confirmed and verified by Ocwen when servicing was transferred. He could not explain how the records of American Home Mortgage were confirmed and verified by AHMSI when servicing was transferred. He could

not explain how the records of Ocwen and its RealServicing electronic system of record, were confirmed and verified when PHH took over servicing of Ocwen and transferred the records from Ocwen's servicing platform to its own servicing platform. This testimony did not satisfy the requirements of *Jones*, in which the records were admissible because the servicer employee relied on the accuracy of the mortgage history and took measures to verify the same and the servicer incorporated the previous servicer's records into its own database and place its own financial interests at stake by relying on those records and that is took steps to review the previous servicer's records in a way that assured itself of the accuracy of those records. *Jones* at p.538.

No such testimony was presented in this case and no reference was made to the verification or the procedures followed to verify accuracy when the records were purportedly integrated. In *Jones* , this Court held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated"** into the business records, FTC v. Direct Marketing Concepts, Inc., 624

F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business**," United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added).

Handville's base formulaic recitation of the business exception to the

hearsay rule had no factual basis. He could not verify the accuracy of any records

as per this testimony. He could not authenticate the note and allonge. He testifiedhe

indicated that his answer to interrogatory 14 was accurate indicating that the

allonge was dated July 16, 2003 (App. p 371). He also stated:

And do you have any information which indicates that the signed

promissory note was in the possession of Option One on July 16, 2003.

A. I don't   (App p. 372)

Thus there is testimony that the allonge was dated July 16, 2003, the date that the

note was signed, even though the allonge was not affixed to the note on that date.

He had no idea when the note was placed in the collateral file:

1    **Q.**    So you have no idea what was in the collateral

2    file when you signed that answer; isn't that correct?

3    **A.**    I had an idea.

4    **Q.**    Well, you had not seen it; isn't that correct?

5    **A.**    Yes.

6    **Q.**    And you didn't know if the original note was in

7    that file; isn't that correct?

8    **A.**    I had not seen any indication that it was missing and my

counsel had talked to  confirm its

28

1    whereabouts, so I'm comfortable with that answer. . . **Q.**
     Okay. Now, when did this note leave the

2    possession of Option One?

3    **A.**   I don't know. (App p. 375-376)

Handville could not confirm that the note and allonge were original documents and in fact in his answers to interrogatories he indicated that the allonge was dated July 16, 2003, the same date as the note. He did not provide any information about the collateral file and the location of collateral file documents, indicating the promissory note and allonge and other documents, which would shed light on when the so-called allonge was indorsed and placed in the collateral file.

The note was in the possession of the closing attorney not in the possession of the Defendant and could not have been signed on July 16, 2003 unless it were signed first or signed remotely contrary to the UCC.

## THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING COPIES OF DOCUMENTS CONTRARY TO THE BEST EVIDENCE RULE, FRE 1002

Howard  Handville  testified that he only looked at copies of documents and did not know the location of or whether there were any original documents ( App.

p 385-393 )    This Court in *Airframes Systems, Inc  L-3 Communications*

*Corporation*  658 F. 3d (First Cir. , 2011) discussed the Best Evidence Rule:

The Best Evidence Rule requires that a party seeking to prove the "content" of a writing must introduce the "original" or a "duplicate" of the original, unless it is established that (1) all originals have been lost or destroyed (absent bad faith by the proponent); (2) the original cannot be obtained; (3) the original is in the possession of an opposing party who refuses to produce it; or (4) the writing is not closely related to a controlling issue. *See* Fed. R.Evid. 1001-1004;


A review of Handville's testimony indicates that he had never seen any original

documents to compare with the copies he looked at and made no effort to locate

these documents and had no idea where they were.  As a result he could not have

authenticated any sales agreements, loan schedules or any Trust Agreement,

because all he looked at were copies without any reference to original documents.

        Rule 1002 specifically requires that original documents be provided:

An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

However he testified that he had never seen the originals of any loan schedules or

trust agreements or any documents. As a result the Trial Court erred by admitting

all of the loan exhibits into evidence.

The following testimony was elicited on cross examination:

    1    **Q.**    Okay.  That assumes that this is an original

    2         document, correct, a copy of an original document;

3      isn't that correct?

4      **A.**    Yes.

5      **Q.**    And you don't know that this is a copy of the

6      original loan schedule in this case; isn't that

7      correct?

8      **A.**    **I have not seen the original.  I don't know.**

9      **Q.**    In fact, you have no idea where the original loan

10     schedule is; isn't that correct?

11     **A.**    I haven't seen it so I don't know.

12     **Q.**    You've made no attempt to find that original loan

13     schedule; isn't that correct?

14     **A.**    No, I haven't.

15     **Q.**    And as a matter of fact, you recall your

16     deposition on April 7th in which you testified

17     under oath; is that correct?

18     **A.**    Yes.

19     **Q.**    You recall that deposition?  In that

20     deposition you had indicated when you've addressed

21     this document, the so-called loan schedule, you

22     indicated that it was a standalone document not

23     attached to the so-called trust agreement; isn't

24     that correct?

31

25      **A.**     In our business records it was a standalone

26      document.

(App p 381)

He also indicated no knowledge about the original documents

stating that the purported loan schedules were not attached to the purported trust

agreement and that he never looked at the original trust agreement and never

compared paragraph by paragraph the copy with any original agreement. (App p

382) He could not provide any information about a loan agreement from Lehman

Brothers Bank and Brothers Holding Inc. as to exhibit G, (App p 383) which he

indicated contained no loan schedules. He stated that he was not aware of any loan

schedules for the document referenced as Exhibit G, (App p 384) an assignment

and assumption agreement and that he has never seen the original and could not

compare the original with what he claimed to be a copy.  He indicated:


**Q.**     And therefore, you cannot say that Exhibit G is an accurate copy
of the original record of any transaction between Lehman Brothers Bank
and Lehman Brothers Holding; isn't that correct?
**A.**     Correct

(App p 384)

He indicated that he was not aware of any documents which existed which indicate that Option One Mortgage Corporation sold the Defendant's mortgage loan to Lehman Brothers Bank:

**Q.**     Are you aware of any documents which exist which indicate that Option One Mortgage Corporation sold the defendants' mortgage loan to Lehman Brothers Bank?

**A.**     No. (App p 384)

He testified that the purported Exhibit by which Lehman Brothers holding purportedly transferred Defendant's loan to Structured Asset Securities Corporation did not contain a loan schedule and that he did not verify the accuracy of his copy because he had never seen the original document. (App p 385)

He indicated that the loan schedules did not contain the street address, city and zip code and that there were no records of any custodian certifications as to this loan.  (App p 387-388)

This witness did not make any effort to communicate with the custodian, Wells Fargo in order to obtain any documents requested in discovery. He was asked  whether PHH had a procedure to verify the

accuracy of prior servicer records and answered that there was a procedure. However his prior deposition testimony was that he was not aware of any such procedure.

**Q.** Okay. And do you recall your testimony in the deposition on April 7, 2022, on pages 19 and 20, in which I asked you, "Does PHH have a protocol to determine -- let me strike that. Does PHH currently have a protocol to confirm and verify the accuracy of all prior servicer documents when it loads the documents on its electronic system of record?" And you answered, "Not to my knowledge."

- Was that your testimony at that time?
**A.** If that's what I'm stating in the deposition, that's correct.

(App p 394)

He did not know of the people who may have verified the accuracy other than they were in India and did not review any documents whether there was any accuracy when the loan was boarded. (App p 394-395) and did not know when exhibits G, H I J K L and M were imaged (App p 396).

He also testified that the Ocwen platform, the predecessor to the current servicing platform is no longer available for review and that he did not know whether any procedures were complied with to verify the accuracy of any data boarded into the Ocwen system when it took over servicing from Homeward Residential. He also testified that he did not have

any first hand knowledge of the manner in which the Option One records were verified when it transferred servicing. (App p 399).

He also testified that he was not aware of any sales agreement from Option One to any entity regarding Defendant's loan(App p 400). Also contrary to the answers to interrogatories, he indicated that somehow another Option One trust had the loan without any documentation for that purported transaction.

This witness could not identify any original documents as to any copies which Plaintiff sought to place in evidence. FRE 1002 was not satisfied, nor was the standard set forth by the First Circuit in *Jones*. Thus the trial Court erred by admitting any documents and his testimony should have been disregarded. The Trial Court's admission of all these exhibits without foundational testimony constituted reversible error.

## CONCLUSION

For the reasons stated in this brief, the Judgment of the Trial Court should be reversed and the complaint dismissed. The Court relied on legally insufficient evidence to establish ownership of the note or to admit documents essential to the Appellee's burden of proof, contrary to the Best Evidence Rule and the requirements for foundational testimony set forth in

US Bank v Jones. R.I.G.L. 6A-3-204 was not complied with by Option One and the Appellee, an entity which the admissions established did not exist could not rely on such a document as there was no evidence that the allonge was affixed to the note when the signature was placed on it. The Appellant presented evidence in the Motion for a New Trial and to alter and amend the Judgment that it was the pattern and practice of Option One, the originator to prepare the allonges before the note was signed and that Option One allonges were signed as stand alone documents not affixed to the instrument, thus not becoming part of the instrument.

The Trial Court abused its discretion by not sanctioning the Appellee for its failure to comply with its discovery obligations. The Appellee engaged in trial by ambush and sought to present evidence not disclosed in discovery and which was contrary to the Admissions deemed admitted due to failure to respond to this discovery.

February 18, 2024

Respectfully Submitted,
APPELLANT-DEFENDANT
MASOUD SHAKOORI-NAMINY
By his Attorney
/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contain 7710 words, excluding the parts of the brief

exempted by Fed. App. P. 321(a)(7)(B)(iii).

2.      This brief complies the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has

been prepared in a proportionality spaced typeface- using 14 pt Times New

Roman.

/s/ John B. Ennis. Esq.

CERTIFICATION OF SERVICE

      I hereby certify that a copy of this brief was served by electronic filing and by email on February 18, 2024

/s/ John B. Ennis, Esq.