NO. 23-1475

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

U.S. BANK N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11,
Plaintiff - Appellee,
v.
MASOUD SHAKOORI-NAMINY,
Defendant - Appellant,
BRENDA SHAKOORI-NAMINY; SAND CANYON CORPORATION; WILMINGTON TRUST, NA, as Successor Trustee to Citibank, N.A., as Trustee for Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed Certificates, Series 2007-SV1; HERITAGE CONCRETE CORP.; FIREPLACE LLC; STEPHEN E. MOTTAU; HALLINAN CAPITAL CORPORATION; SAND CANYON CORPORATION,
Defendants

On Appeal from a Final Judgment Entered After an Opinion and Order Granting A Declaratory Judgment and denying a Motion in Limine and for Sanctions and a Motion to Alter and Amend Judgment
Entered in the United States District Court for the District of Rhode Island

**BRIEF OF APPELLANT**
**MASSOUD SHAKOORI NAMINY**

John B. Ennis                                  February 21, 2024
Rhode Island Bar # 2135
Court of Appeals Bar # 47641
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: (401)943-9230
Fax: (401)679-0035
Email: Jbelaw75@gmail.com

1

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    p. 2

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 3

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    p. 5

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    p. 8

## TABLES OF AUTHORITIES

### CASES

*Brook Village North Associates v. General Electric Company*, 686 F. 2d 66 (First Cir., 1982)                                                        p. 21

*Rainbolt v. Johnson,* 669 F.2d 767 (D.C.Cir.1981)                      p. 21

*United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981).                              P. 21

*See Westmoreland v. Triumph* 71*71 *Motorcycle Corp.,* 71 F.R.D. 192 (D.Conn.1976).                                                     p. 22

U.*S. Bank Trust v. Jones*, 925 F. 3d 534 (1st Circuit, 2019).

                                                    p. 6, 24, 25, 26, 35

United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012)              p. 26

United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992)          p. 26

*United States v. Vigneau,* 187 F.3d 70, 77 & n.6 (1st Cir. 1999)          p. 26

*FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 16 n.15 (1st Cir. 2010)   p. 13

*Airframes Systems, Inc  L-3 Communications Corporation*  658 F. 3d          p. 29
(First Cir. , 2011)

Kohler v. U.S. Bank Nat. Ass'n, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D.
    Wis. June 21, 2013)          p. 10
.
*Note Cap. Grp., Inc. v. Perretta,* 207 A.3d 998, 1000 n.4 (R.I. 2019)          p. 10

*Pimentel v. Deutsche Bank National Trust Company,* 174 A.3d 740
(R.I., 2017)          p. 11

*NV One, LLC v. Potomac Realty Capital, LLC,* 84 A.3d 800,  (R.I. 2014)     p. 11

Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC,
    717 F. Supp. 2d 724, 734 (E.D. Livonia Mich. 2010),          p. 10

*Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163, 166 (3d Cir. 1988)
          p. 11

*Duxbury v Roberts*  388 Mass 385, 446 NE2d 401(1983)          p. 13

STATUTES

R.I.G.L§ 6A-3-204          p. 5, 8, 10, 13
New York's Uniform Commercial Code section U.C.C. § 3-202       p. 13
.Conn.Gen.Stat.Ann. § 42a-3-202(2) (West 1987)          p. 14
 N.H.Rev.Stat.Ann. § 382-A:3-202(2) (1961);          p. 14
 N.J.Stat.Ann. § 12A:3-202(2) (West 1962).          P. 14

## JURISDICTIONAL STATEMENT

John McNicolas of the law firm of Korde & Associates purportedly on behalf of US Bank, N.A. as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structed Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC 11 ("U.S. Bank") filed a complaint and an amended complaint against Masoud Shakoori-Naminy(:Shakoori") and other defendants seeking the following relief:

(1) Declaratory Judgment that Shakoori has ratified the Note and Mortgage and that he is bound by their terms as amended by a Loan Modification Agreement and that it was binding on him and Brenda Shakoori.

(2) Declaratory Judgment equitably assigning the Mortgage to U.S. Bank nunc pro tunc as of October 1, 2003, or alternatively as of December 15, 2008 or alternatively as of February 22, 2013.

(3) Costs and attorney fees

On April 4, 2022 and April 18, 2022 a Bench Trial was heard on only the Equitable Assignment Claim of the Plaintiff. On November 16, 2022, Judge Smith issued Findings of Fact and Conclusions of Law and on November 16, 2022 entered a Judgment for Plaintiff.

On December 14, 2022, Shakoori filed a Motion for a New Trial and to Alter or Amend the Judgment.

On May 3, 2023, Judge Smith issued a Memorandum and Order denying the Motion for a New Trial and the Motion to Alter or Amend the Judgment.

On May 27, 2023 Shakoori filed a Notice of Appeal. In accordance with FED. R. App. Pro. 4(a) and paid the requisite filing fee. This appeal is from a final judgment that disposes of all parties claims by ordering a sale of the property. Consequently, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. 191.

## STATEMENT OF THE ISSUES

(1) The Appellee failed to file a Disclosure Statement pursuant to the original Fed. R. Civ P. 7.1 or Fed. R. Civ P. 7.1 as amended. This raises serious questions about the jurisdiction of the District Court.

The Appellant contends that the Trial Court committed error by entering Judgment for the Plaintiff on its Declaratory Judgment complaint for an Equitable Assignment of the mortgage and by denying the Motion for a New Trial and to Alter or Amend the Judgment.

(2) The  Appellant contends that the Trial Court committed error by misapplying R.I.G.L. 6A-3-204 finding  that the allonge did not have to be affixed to the

promissory note when the signature on the allonge was placed.

(3)  The Appellant  contends that the Trial Court committed error by disregarding uncontroverted  evidence in the record indicating that the allonge was not affixed to the  promissory note when the purported signature on the allonge was made.

(4)   The Appellant contends that the Trial Court committed error by admitting into evidence  exhibits propounded by the Plaintiff's witness due to a misapplication of the Best Evidence Rule (FRE 1002 and due to the witnesses inability to provide any foundation for the these records of a prior service as required by US Bank v Jones.

(5)     The Appellant contends that the Trial Court committed error  by not sanctioning the Appellee for discovery violations and by permitting the Appellee to present evidence which rebutted facts established by the unanswered Request for Admissions

## STATEMENT OF THE CASE

Appellee filed a Complaint for a Declaratory Judgment (App P. 417 and an Amended Complaint (App. P. 433).   The relevant exhibits to the Amended Complaint were Exhibits 3 (App P. 451), 4 (App p. 475), 13 (App p. 500), 14 (App p. 502), 23 (App p. 504) and 24 (App p. 507).Appellant answered the Amended complaint (App 509). Appellant served Requests for Admissions, Interrogatories

and Requests for Production. These were disregarded by the Appellee until the eve of trial and no response to the Request for Admissions were served, Nor was a Motion filed to remove the admissions at any time. As a result Appellant filed a Motion in Limine and for Sanctions referencing the failure of the Appellee to comply with its discovery obligations(App. P. 63).   The Trial Court did not grant the Motion for Sanctions and Appellee was permitted to present evidence in contrary to its untimely answers to interrogatories and responses to requests for production and which  asserted facts contrary to those deemed admitted by the failure to respond to the Requests for Admissions. The most significant Admissions which the Appellant was permitted to rebut was the admission that the Trust did not exist and that US Bank was never trustee for this nonexistent trust. The Appellant presented a witness, Howard Handville, whose testimony did not satisfy the Best Evidence Rule and the business records exception to the hearsay rule. The Trial Court denied the Motion for Sanctions and granted the Declaratory Relief the Appellee sought, namely an equitable assignment of the mortgage to the nonexistent trust. There was no finding as to the grantor of the equitable assignment due to the Court's finding that the note was transferred to the nonexistent appellant contrary to the uncontroverted evidence that the promissory

note signed by the Appellant dated July 16, 2003 and the allonge dated July 16, 2003 were not affixed when the allonge was signed on July 16, 2003.

## SUMMARY OF THE ARGUMENT

Shakoori initially notes the failure of US Bank to comply with Fed R. Civ P. 7.1, which would support the jurisdiction of the District Court to hear this diversity case. The

## ARGUMENT

 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY MISINTERPRETING THE CLEAR, CONCISE PLAN LANGUAGE OF R.I.G.L. 6A-3-204 AND ERRONEOUSLY FOUND THAT THE NOTE HAD BEEN NEGOTIATED TO THE APPELLANT

The first of these manifest errors of law was the Trial  Court's analysis of R.I.G.L. 6A-3-204, which specifically states:

**§ 6A-3-204. Indorsement.**

**(a) "Indorsement" means a signature,** other than that of a signer as maker, drawer, or acceptor, **that** alone or accompanied by other words **is made on an instrument for the purpose of (i) negotiating the instrument**, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of

the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. **For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument**.

**(b)** "Indorser" means a person who makes an indorsement.

**(c)** For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument.

**(d)** If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

The clear language of this statute is that for a note to be transferred to a party by the originator of the loan, Option One Mortgage Corporation ("Option One"), the originator had to endorse the note by signing the note, either in blank or to a specific party. However the analysis does not end at that point. The statute when parsed properly, clearly states:

**"Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument,**

The note to be endorsed by a signature on a piece of paper affixed to the note when the signature was made.

**For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument**.

No testimony was presented by US Bank, which indicated that the so-called allonge of Mary Conway, dated July 16, 2003 was affixed to the note, which was also dated July 16, 2003, when her signature was made. No testimony was presented by the US Bank's witness whether the allonge was affixed to the note signed by the Defendant on July 16, 2003. In fact the evidence presented was that the note was in the possession of the closing attorney on July 16, 2003 and was not transmitted to Option One on July16, 2003. Thus it could not have been affixed to that note on that date when her signature was purportedly made.

This Court made a manifest error of law in its analysis of this transaction aby disregarding the statutory mandate for the paper which contains the signature to be affixed to the note in order to transfer by negotiation. The Trial Court made an error of law by stating:

"The Court's independent research identifies no [Rhode Island] or [First] Circuit authority establishing the method of attachment necessary to create an effective [i]ndorsement" by allonge, Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 717 F. Supp. 2d 724, 734 (E.D. Livonia Mich. 2010), and identifies no authority establishing when the allonge must be attached to the note to create an effective indorsement. Regardless, even if the allonge was not physically attached to the note at or soon after execution, courts faced with similar questions have held that so long as "information on [the] allonge indicates an intent to serve as an [i]ndorsement of the . . . note," the indorsement is

effective. Kohler v. U.S. Bank Nat. Ass'n, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D. Wis. June 21, 2013). Where "the allonge[] presented to the Court w[as] attached to the [n]ote" and where the allonge makes unambiguous reference to the note, "given the clear intent that the [n]ote and [a]llonges were to be physically attached, the evidence is insufficient to invalidate the [i]ndorsement[]." Livonia Prop. Holdings, 717 F. Supp. 2d at 734 (applying Michigan statute identical in relevant part to R.I. Gen. Laws § 6A-3-204(a)).

Here, the allonge was attached to the original note that was presented to the Court, and the allonge references the note by listing the borrower's name, loan number, property address, loan amount, note date, and servicing number. See PXC. Therefore, the evidence presented by Plaintiff is sufficient to validate the indorsement.

However this Court disregarded *Note Capital Group. Inc.  v Perretta,* 207 A. 3d 998, 1000 n.4 (R.I., 2019). In this case and two other Rhode Island cases, the Supreme Court referenced an allonge by its definition in Black's Law Dictionary:

An allonge is "[a] slip of paper sometimes attached to a negotiable instrument **for the purpose of receiving further indorsements** when the original paper is filled with indorsements." Note Cap. Grp., Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019) (quoting Black's Law Dictionary 92 (10th ed. 2014)).

The Supreme Court had made the same analysis in *Pimentel v. Deutsche Bank National Trust Company,* 174 A.3d 740 (R.I., 2017), stating:

[4] "An `allonge' is `[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements.'" *Moura,* 90 A.3d at 853 n. 1 (quoting *NV One, LLC v.*

*Potomac Realty Capital, LLC,* 84 A.3d 800, 803 n. 4 (R.I. 2014)) and Black's Law Dictionary 88 (9th ed. 2009)).

In all of these cases the Rhode Island Supreme Court clearly defined allonge as a paper attached to a negotiable instrument for the purpose of receiving further endorsements when the original paper is filled with indorsements. The term :"for the purpose of receiving further endorsements" speaks of an indorsement on the allonge which has been affixed to the note in a previous time. Shakoori made this argument at trial which was rejected by the Trial Court.

Cases from other jurisdictions support Shakoori's position that for an endorsement to be effective the signature must be on a paper affixed to the note when the allonge was executed.

New York's Uniform Commercial Code section U.C.C. § 3-202(1) states, in relevant part, that "negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order, it is negotiated by delivery with any necessary endorsement. . . ." The next subsection, U.C.C. § 3-202(2), requires that an endorsement "be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto so as to become a part thereof." Indeed, under U.C.C. § 3-201(3), "negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee

is the owner."[1]  Further, under New York law the rule is that "Without an indorsement a transferee cannot be a holder."       The operative section of New York's UCC (cited as CLS UCC § 3-202(2)) requires indorsement on the instrument itself "or on a paper so firmly affixed thereto as to become a part thereof" in order to effectuate a valid assignment of the entire instrument."[2]  The commentary to this section of New York's UCC lists as authority cases following the same proposition of law from throughout the Country.  These cases stand for such basic propositions as "assignment of vendor's lien note, without endorsement upon instrument itself, was not in compliance with provisions of UCC § 3-202(2) or commercial practices governing such transaction."[3]  The official commentary also cites for a controlling proposition of law this holding regarding allonges "Document purporting to transfer and assign promissory note which was never attached to note did not serve as effective endorsement of note under UCC § 3-202(2).

    A Massachusetts decision relied upon in the New York commentary held that "that payee's signing of instrument that assigned note did not constitute indorsement of note under UCC § 3-202(2) because assignment instrument was not

_____

so firmly affixed to note as to be part thereof." *Duxbury v Roberts* 388 Mass 385,

446 NE2d 401(1983). The Massachusetts UCC for negotiable instruments is

similar to Rhode Island UCC 3-204, In *Duxbury,* the Court held:

To have a negotiation of an instrument payable to order, the instrument must be delivered with any necessary indorsement. G.L.c. 106, § 3-202 (1). "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." G.L.c. 106, § 3-202 (2), as appearing in St. 1957, c. 765, § 1. In this case Baines did not sign the note when he transferred it to Duxbury. Rather, he signed only the document entitled, "Partial Assignment of Note and Mortgage." His signing of this document does not constitute an indorsement of the note because it was not "so firmly affixed thereto as to become a part thereof." Therefore, Duxbury did not become a holder or a holder in due course.

This indicates that the paper/allonge must be affixed to the note when the

endorsement is made.

In *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 168 (3d Cir. N.J.

1988) the Third Circuit held:

"the unanimity of the courts in cases where the signature is separate from the instrument can be explained by a judicial perception that it is sound policy to require the indorsement to be on the instrument.

In *Madison,* The Court noted:

The district court acknowledged that the use of a separate, unattached sheet of paper to carry the indorsements failed to comply with Uniform Commercial Code section 3-202(2), which reads: "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Conn.Gen.Stat.Ann. § 42a-3-202(2) (West 1987); N.H.Rev.Stat.Ann. § 382-A:3-202(2) (1961); N.J.Stat.Ann. § 12A:3-202(2) (West 1962).

14

Thus contrary to the Trial Court's erroneous analysis, the Third Circuit properly

interpreted the UCC requirement that the endorsement must be written on a paper

affixed to the note to thereby become a part of the note. New York has the firmly

affixed  provision of the former section of the UCC, which Rhode Island at one

time had.  There is no distinction in Rhode Island commercial law between firmly

affixed or affixed as the requirement of the paper being affixed to the note when

the signature on the paper/allonge is made.

The Ohio Court of Appeals similarly interpreted its UCC in the same

manner in US Bank Trust National Assn v Phann, 220 NE 3rd 1001( Ohio App,

2023), in which the  Court held:

{¶ 22} An allonge is a method of endorsing a note and is defined as "[a] slip of
paper sometimes attached to a negotiable instrument for the purpose of receiving
further indorsements when the original paper is filled with indorsements."
(Citations omitted) *Courthouse Crossing Acquisitions,* 2d Dist. Montgomery,
2017-Ohio-9231, 101 N.E.3d 1243, at ¶ 78. In general, "[t]he paper must be
affixed to the instrument in order for the signature to be considered part of the
instrument." *HSBC Bank USA v. Thompson,* 2d Dist. Montgomery No. 23761,
2010-Ohio-4158, 2010 WL 3451130, ¶ 66. "The use of an allonge to add
indorsements to an instrument when there is no room for them on the instrument
itself dates from early common law." *Id.* at ¶ 56, citing *Southwestern Resolution
Corp. v. Watson,* 964 S.W.2d 262, 263 (Tex. 1997).

In the case of *In Re; Weisband*,  B.R. 427 B.R. 13, 15 (Bankr D. AZ, 2010)
the Bankruptcy Court held that for an endorsement by allonge the paper had to be
affixed to the note when signed:

However, for the Endorsement to constitute part of the Note, it must be on "a paper affixed to the instrument."

These cases and all the UCC versions in the country refer to the necessity of indorsements to be made on promissory notes or on papers(referred to as alloges) affixed (or in some states firmly affixed) to the note. The simple language of the Rhode Island (and other) statutes indicates that the endorsement is an action taken to transfer the note by negotiation pursuant to UCC 3-204. The signature which reflects this action must be on the note, which is easy to prove. This case however involved the second part of the statute, namely that the endorsement can only be made on a paper affixed to the note/instrument. The statute in no way contemplates that negotiation can be effective if a signed allonge is later affixed to the note. There is no language in the UCC which permits negotiation and transfer in this manner. Thus the Trial Court seriously erred in finding that the Appellee was the holder of the note.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING US BANK TO PRESENT EVIDENCE CONTRARY TO FACTS ESTABLISHED BY US BANK'S FAILURE TO RESPOND TO REQUEST FOR ADMISSIONS

FRCP 36 sets forth the standard for Requests for Admissions:

(b) EFFECT OF AN ADMISSION; WITHDRAWING OR AMENDING IT. A matter admitted under this rule is conclusively established unless the court, on motion, permits the

admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

The following are Request for Admissions  which US Bank did not timely respond

to and to which it did not move to be allowed to withdraw before Trial or at any

time. Thus none of these Admissions can be controverted:

1. On December 15, 2008 , Option One was not owed any indebtedness under the Defendant's note.

2. On December 15, 2008 Option One did not own Defendant's note.

3. On December 15, 2008 Option One did not own Defendant's mortgage.

4. On December 15, 2008, La Salle Bank National Association as Trustee for Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11("LaSalle as Trustee" did not purchase Defendant's Mortgage from any entity.

5. On December 15, 2008, La Salle Bank as Trustee did not purchase Defendant's note from any entity.

6. La Salle as Trustee did not provide any consideration to any entity on December 15, 2008.

7. No entity with the name of Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11has ever existed.

8. La Salle Bank, National Association was never the trustee for

Structured Asset Securities Corporation Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC11.

9. The purported assignment referenced as Exhibit 5 to the complaint was not signed by Linda Green.

10. The purported witness to the purported assignment referenced as Exhibit 5 to the complaint was not signed by Tywanna Thomas.

11. The purported notarization to the purported assignment referenced as Exhibit 5 to the complaint was not signed by Bailey Kirchner.

12. Exhibit A is a genuine and authentic copy of a complaint filed by AHMSI against DocX, LLC and Lender

13. Lender Processing Services, Inc. ("LPS") was the parent company of DocX, LLC.

14. Linda Green was never an officer of AHMSI.

15. Exhibit B is a genuine and authentic copy of a Consent Order of the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Comptroller of the Currency, the Office of Thrift Supervision, Lender Processing Services, Inc., DocX, LLC and LPS Default Solutions, Inc., dated April 13, 2011.

16. Option One did not own Plaintiff's mortgage on July 15, 2011.

17. On March 18, 2009, an affidavit was filed in the United States Bankruptcy Court for the Eastern District of Louisiana in case number 07-11862.

18. Exhibit C is a genuine and authentic of the affidavit referenced in Request for Admission 17.

18. The original of Exhibit C was signed by Dale Sugimoto.

19. Dale Sugimoto on March 18, 2009 was the President of Sand Canyon.

20. On March 18, 2009 Sand Canyon did not own any residential real estate mortgages.

21. On July 15, 2011 Option One did not own any residential real estate mortgages.

22. On December 15, 2008 Option One did not own any residential real estate mortgages.

23. On July 15, 2011, Sand Canyon did not own any residential real estate mortgages.

24. On December 15, 2008 Sand Canyon did not own Defendant's mortgage.

25. On December 15, 2008 Sand Canyon did not own Defendant's note.

26. La Salle Bank as Trustee did not provide any consideration to Sand Canyon for Defendant's note on July 15, 2011.

27. La Salle Bank as Trustee did not provide any consideration to Sand Canyon for Defendant's mortgage on July 15, 2011.

28. La Salle Bank as Trustee never purchased Defendant's mortgage from Sand Canyon at any time.

29. La Salle Bank as Trustee never purchased Defendant's note from Sand Canyon at any time.

30. La Salle Bank as Trustee did not provide any consideration for Defendant's mortgage to Sand Canyon on July 15, 2011.

31. Exhibit 6 to the complaint was not signed by an officer of Sand Canyon.

32. Tonya Hopkins was not an officer of Sand Canyon on July 15, 2011.

19

33. Tonya Hopkins was an employee of AHMSI on July 15, 2011.

34. Tonya Hopkins did not sign the purported assignment dated July 15, 2011.

35. La Salle Bank National Association did not exist as an entity on February 22, 2013.

36. La Salle Bank National Association merged with Bank of America, N.A. on October 17, 2008.

37. On February 22, 2013, La Salle Bank National Association no longer existed as an entity.

38. On February 22, 2013 La Salle Bank as Trustee did not own Defendant's mortgage.

39. La Salle Bank as Trustee never granted a power of attorney to Homeward Residential, Inc., authorizing it to sign an assignment of mortgage from La Salle Bank as Trustee to U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 on February 22, 2013.

40. U.S. Bank National Association was never a Trustee for an entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

41. There is no such entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC1.

42. Pamela Stoddard was not an officer of Homeward Residential on February 22, 2013.

43. Pamela Stoddard was never an officer of Homeward Residential on February 22, 2013.

44. Pamela Stoddard was an employee of Security Connections, Inc. on February 22, 2013.

45. Pamela Stoddard did not sign the purported assignment dated February 22, 2013.

The Amended Complaint requested that the following relief be granted:

(2) Declaratory Judgment equitably assigning the Mortgage to U.S. Bank nunc pro tunc as of October 1, 2003, or alternatively as of December 15, 2008 or alternatively as of February 22, 2013.

The Trial Court committed error by not accepting these admissions as binding, particularly number 7 which established that the Plaintiff Trust did not exist, number 8 that La Salle Bank National Association was never the trustee for this nonexistent entity, number 40 that US Bank was never trustee for this nonexistent entity and number 41 that there is no such entity named Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2003-BC1.

The case law is clear that Plaintiff cannot undo these admissions, nor has it made any attempt to do so. The case law in the First Circuit and elsewhere is clear, these admissions bind the Plaintiff. In *Brook Village North Associates v. General Electric Company*, 686 F. 2d 66 (First Cir., 1982) this Court reversed the Trial Court for allowing a withdrawal of an admission at trial on Motion of the party

bound by the admission. The Court noted the basis for the rule, the procedure and

standards for removing admissions and the different standard at trial:

Under Rule 36 in its present form (the rule was amended in 1970), if a party fails timely to answer a request for admissions, the requested items are deemed admitted. Any matter thus admitted under the Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. And courts have not hesitated in appropriate cases to apply the sanction of Rule 36 to material facts that conclusively establish or preclude a party's claim. *See, e.g., Rainbolt v. Johnson,* 669 F.2d 767 (D.C.Cir.1981); *United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981).

The instant case poses the question of the discretion of a district court to permit withdrawal or amendment of an admission by default once trial has commenced. In general, the standard for being relieved of a failure to respond in a timely fashion to a request for admissions is permissive: a court may allow withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Fed.R.Civ.P. 36(b). The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions. *See Westmoreland v. Triumph* 71*71 *Motorcycle Corp.,* 71 F.R.D. 192 (D.Conn.1976).

The Rule understandably imposes a more restrictive standard, however, on the granting of a request to avoid the effect of an admission once trial had begun. Rule 36(b) specifies that the court can permit withdrawal or amendment of admissions "[s]ubject to the provisions of Rule 16 governing amendment of pre-trial order." Rule 16 authorizes the conduct and defines the contours of a conference before trial. "The chief purposes of the pre-trial conference are to define and simplify the issues, to lessen surprise at trial and the risk of judicial error, to conclude stipulations on matters of evidence, and to promote settlements." 3 J.

Moore, *Moore's Federal Practice* ¶ 16.03 at 16-6 to 16-7 (2d ed. 1982) (footnote omitted). To give effect to matters resolved at conference, Rule 16 provides for the court to make an order "which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreement of counsel." The pre-trial order, once entered, controls the subsequent course of action. "No proof need be offered as to matters stipulated to in the order, since the facts admitted at the pretrial conference and contained in the pre-trial order stand as fully determined as if adjudicated at the trial." 3 J. Moore, *supra,* ¶ 16.19 at 16-40 to 16-41 (footnote omitted). The order can be modified at trial, but only "to prevent manifest injustice." Thus, Rule 16 by its terms sets a higher threshold for a trial judge to exercise his discretion to avoid the force of admissions under Rule 36 once trial has begun.

The district court in the instant case appears to have disregarded the existence of this higher threshold for opening up admissions after commencement of trial.

At no time, did Plaintiff file a Motion to withdraw these admissions. The

Defendant raised this issue on the first day of trial as indicated by the Transcript:

And I would specifically present to the Court Request for Admission Number Seven which states that no entity within the name of Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11 has ever existed. That is an established fact which is the name of the plaintiff in this case which is seeking relief.

Request for Admission Eight, which is a fact accepted as true, deemed true, pursuant to Federal Rule of Civil Procedure 36, is that LaSalle Bank National Association was never the trustee for Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

Request for Admission Forty, which is deemed admitted, which is very crucial: U.S. BankNational Association was never a trustee for any entity named Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11.

And Request for Admission Number Four, there is no such entity named Structured Asset Investment Loan Trust,Mortgage Pass-Through Certificates, Series 2003-BC11.

Now, as a result, your Honor, by virtue of that, my brother indicated, he's the attorney for this trust, it has been deemed admitted that this trust does not exist. So I would suggest that the plaintiff cannot  proceed under the name it's proceeding under because it doesn't exist as a matter of law and fact.

Defendant's Requests for Admissions established that these were conclusive facts and Plaintiff could not at the last minute in trial without a Motion ask the Court to not consider these Admissions because they were not true. This defeats the purpose of the rule and is prejudicial to the Defendant who relied on the admissions. Defendant also had   had filed a  Motion in Limine and for Sanctions pursuant to Fed. R. Civ. Pro. 37.

## THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE PROPOUNDED BY APPELLEE THROUGH ITS WITNESS HOWARD HANDVILLE

The Court erred by admitting their loan documentation exhibits into evidence despite they inability of the purported business records witness to authenticate these records and the refusal of the Plaintiff to provide them until the eve of trial, thus further prejudicing the Defendant.  The standard for admission of purported business records  is set forth in U.*S. Bank Trust v. Jones*, 925 F. 3d 534

(1st Circuit, 2019). *Jones* mandates that the testimony of Howard Handville did

not verify anything about the boarding or the verification of the records of

Homeward Residential (formerly American Home Mortgage Servicing, Inc.,

This corporation was not the original American Home Mortgage Servicing, Inc.,

the original servicer, which filed a Chapter 11 Bankruptcy Petition on August 6,

20007 in case number 07-11050 in the United States Bankruptcy Court for the

District of Delaware, of which this case can take judicial notice. This mortgage

loan has been serviced by five entities:

(1) Option One Mortgage Corporation

(2) The first American Home Mortgage Servicing, Inc. until its bankruptcy on
August 6, 2007.

(3) The second American Home Mortgage Servicing, Inc. from its creation on
September 6, 2007 until its name change of Homeward Residential, Inc. on May
31, 2012 as reflected in the record of the Rhode Island Secretary of State, of which
the Court can take judicial notice.

(4)     Ocwen Loan Servicing, LLC from March 1, 2013 to June 1, 2019.

(5) PHH Mortgage Services from June 1, 2019.

This witness could not explain how the records of Homeward/AHMSI

regarding this loan were confirmed and verified by Ocwen when servicing was

transferred. He could not explain how the records of American Home Mortgage

were confirmed and verified by AHMSI when servicing was transferred. He could

not explain how the records of Ocwen and its RealServicing electronic system of record, were confirmed and verified when PHH took over servicing of Ocwen and transferred the records from Ocwen's servicing platform to its own servicing platform. This testimony did not satisfy the requirements of *Jones*, in which the records were admissible because the servicer employee relied on the accuracy of the mortgage history and took measures to verify the same and the servicer incorporated the previous servicer's records into its own database and place its own financial interests at stake by relying on those records and that is took steps to review the previous servicer's records in a way that assured itself of the accuracy of those records. *Jones* at p.538.

No such testimony was presented in this case and no reference was made to the verification or the procedures followed to verify accuracy when the records were purportedly integrated. In *Jones* , this Court held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated"** into the business records, FTC v. Direct Marketing Concepts, Inc., 624

F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business**," United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added).

Handville's base formulaic recitation of the business exception to the

hearsay rule had no factual basis. He could not verify the accuracy of any records

as per this testimony. He could not authenticate the note and allonge. He testifiedhe

indicated that his answer to interrogatory 14 was accurate indicating that the

allonge was dated July 16, 2003 (App. p 371). He also stated:

And do you have any information which indicates that the signed

promissory note was in the possession of Option One on July 16, 2003.

A. I don't   (App p. 372)

Thus there is testimony that the allonge was dated July 16, 2003, the date that the

note was signed, even though the allonge was not affixed to the note on that date.

He had no idea when the note was placed in the collateral file:

1   **Q.**   So you have no idea what was in the collateral

2   file when you signed that answer; isn't that correct?

3   **A.**   I had an idea.

4   **Q.**   Well, you had not seen it; isn't that correct?

5   **A.**   Yes.

6   **Q.**   And you didn't know if the original note was in

7   that file; isn't that correct?

8   **A.**   I had not seen any indication that it was missing and my

counsel had talked to  confirm its

28

1      whereabouts, so I'm comfortable with that answer. . . **Q.**

          Okay.  Now, when did this note leave the

2      possession of Option One?

3      **A.**    I don't know. (App p. 375-376)

Handville could not confirm that the note and allonge were original documents and in fact in his answers to interrogatories he indicated that the allonge was dated July 16, 2003, the same date as the note.  He did not provide any information about the collateral file and the location of collateral file documents, indicating the promissory note and allonge and other documents, which would shed light on when the so-called allonge was indorsed and placed in the collateral file.

The note was in the possession of the closing attorney  not in the possession of the Defendant and could not have been signed on July 16, 2003 unless it were signed first or signed remotely contrary to the UCC.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING COPIES OF DOCUMENTS CONTRARY TO THE BEST EVIDENCE RULE, FRE 1002

Howard  Handville  testified that he only looked at copies of documents and did not know the location of or whether there were any original documents ( App.

p 385-393 )    This Court in *Airframes Systems, Inc  L-3 Communications*

*Corporation*  658 F. 3d (First Cir. , 2011) discussed the Best Evidence Rule:

The Best Evidence Rule requires that a party seeking to prove the "content" of a writing must introduce the "original" or a "duplicate" of the original, unless it is established that (1) all originals have been lost or destroyed (absent bad faith by the proponent); (2) the original cannot be obtained; (3) the original is in the possession of an opposing party who refuses to produce it; or (4) the writing is not closely related to a controlling issue. *See* Fed. R.Evid. 1001-1004;

A review of Handville's testimony indicates that he had never seen any original

documents to compare with the copies he looked at and made no effort to locate

these documents and had no idea where they were.  As a result he could not have

authenticated any sales agreements, loan schedules or any Trust Agreement,

because all he looked at were copies without any reference to original documents.

Rule 1002 specifically requires that original documents be provided:

An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

However he testified that he had never seen the originals of any loan schedules or

trust agreements or any documents. As a result the Trial Court erred by admitting

all of the loan exhibits into evidence.

The following testimony was elicited on cross examination:

1    **Q.**    Okay.  That assumes that this is an original

2          document, correct, a copy of an original document;

30

3    isn't that correct?

4    **A.**    Yes.

5    **Q.**    And you don't know that this is a copy of the

6    original loan schedule in this case; isn't that

7    correct?

8    **A.    I have not seen the original.  I don't know.**

9    **Q.**    In fact, you have no idea where the original loan

10   schedule is; isn't that correct?

11   **A.**    I haven't seen it so I don't know.

12   **Q.**    You've made no attempt to find that original loan

13   schedule; isn't that correct?

14   **A.**    No, I haven't.

15   **Q.**    And as a matter of fact, you recall your

16   deposition on April 7th in which you testified

17   under oath; is that correct?

18   **A.**    Yes.

19   **Q.**    You recall that deposition?  In that

20   deposition you had indicated when you've addressed

21   this document, the so-called loan schedule, you

22   indicated that it was a standalone document not

23   attached to the so-called trust agreement; isn't

24   that correct?

25      **A.**     In our business records it was a standalone

26      document.

(App p 381)

He also indicated no knowledge about the original documents

stating that the purported loan schedules were not attached to the purported trust

agreement and that he never looked at the original trust agreement and never

compared paragraph by paragraph the copy with any original agreement. (App p

382) He could not provide any information about a loan agreement from Lehman

Brothers Bank and Brothers Holding Inc. as to exhibit G, (App p 383) which he

indicated contained no loan schedules. He stated that he was not aware of any loan

schedules for the document referenced as Exhibit G, (App p 384) an assignment

and assumption agreement and that he has never seen the original and could not

compare the original with what he claimed to be a copy.  He indicated:


**Q.**     And therefore, you cannot say that Exhibit G is anaccurate copy
of the original record of any transaction between Lehman Brothers Bank
and Lehman Brothers Holding; isn't that correct?
**A.**     Correct

(App p 384)

32

He indicated that he was not aware of any documents which existed which indicate that Option One Mortgage Corporation sold the Defendant's mortgage loan to Lehman Brothers Bank:

**Q.** Are you aware of any documents which exist which indicate that Option One Mortgage Corporation sold the defendants' mortgage loan to Lehman Brothers Bank?

**A.** No. (App p 384)

He testified that the purported Exhibit by which Lehman Brothers holding purportedly transferred Defendant's loan to Structured Asset Securities Corporation did not contain a loan schedule and that he did not verify the accuracy of his copy because he had never seen the original document. (App p 385)

He indicated that the loan schedules did not contain the street address, city and zip code and that there were no records of any custodian certifications as to this loan. (App p 387-388)

This witness did not make any effort to communicate with the custodian, Wells Fargo in order to obtain any documents requested in discovery. He was asked whether PHH had a procedure to verify the

accuracy of prior servicer records and answered that there was a procedure. However his prior deposition testimony was that he was not aware of any such procedure.

> **Q.**            Okay. And do you recall your testimony in the deposition on April 7, 2022, on pages 19 and 20, in which I asked you, "Does PHH have a protocol to determine -- let me strike that. Does PHH currently have a protocol to confirm and verify the accuracy of all prior servicer documents when it loads the documents on its electronic system of record?" And you answered, "Not to my knowledge."
>
>      •        Was that your testimony at that time?
>
> **A.**      If that's what I'm stating in the deposition, that's correct.

(App p 394)

He did not know of the people who may have verified the accuracy other than they were in India and did not review any documents whether there was any accuracy when the loan was boarded. (App p 394-395) and did not know when exhibits G, H I J K L and M were imaged (App p 396).

He also testified that the Ocwen platform, the predecessor to the current servicing platform is no longer available for review and that he did not know whether any procedures were complied with to verify the accuracy of any data boarded into the Ocwen system when it took over servicing from Homeward Residential. He also testified that he did not have

any first hand knowledge of the manner in which the Option One records were verified when it transferred servicing. (App p 399).

He also testified that he was not aware of any sales agreement from Option One to any entity regarding Defendant's loan(App p 400). Also contrary to the answers to interrogatories, he indicated that somehow another Option One trust had the loan without any documentation for that purported transaction.

This witness could not identify any original documents as to any copies which Plaintiff sought to place in evidence. FRE 1002 was not satisfied, nor was the standard set forth by the First Circuit in *Jones*. Thus the trial Court erred by admitting any documents and his testimony should have been disregarded. The Trial Court's admission of all these exhibits without foundational testimony constituted reversible error.

CONCLUSION

For the reasons stated in this brief, the Judgment of the Trial Court should be reversed and the complaint dismissed. The Court relied on legally insufficient evidence to establish ownership of the note or to admit documents essential to the Appellee's burden of proof, contrary to the Best Evidence Rule and the requirements for foundational testimony set forth in

US Bank v Jones. R.I.G.L. 6A-3-204 was not complied with by Option One and the Appellee, an entity which the admissions established did not exist could not rely on such a document as there was no evidence that the allonge was affixed to the note when the signature was placed on it. The Appellant presented evidence in the Motion for a New Trial and to alter and amend the Judgment that it was the pattern and practice of Option One, the originator to prepare the allonges before the note was signed and that Option One allonges were signed as stand alone documents not affixed to the instrument, thus not becoming part of the instrument.

The Trial Court abused its discretion by not sanctioning the Appellee for its failure to comply with its discovery obligations. The Appellee engaged in trial by ambush and sought to present evidence not disclosed in discovery and which was contrary to the Admissions deemed admitted due to failure to respond to this discovery.

February 18, 2024

Respectfully Submitted,
APPELLANT-DEFENDANT
MASOUD SHAKOORI-NAMINY
By his Attorney
/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contain 7710 words, excluding the parts of the brief exempted by Fed. App. P. 321(a)(7)(B)(iii).

2.      This brief complies the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionality spaced typeface- using 14 pt Times New Roman.

/s/ John B. Ennis. Esq.

CERTIFICATION OF SERVICE

I hereby certify that a copy of this brief was served by electronic filing and by email on February 21, 2024

/s/ John B. Ennis, Esq.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

U.S. BANK N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11,

Plaintiff - Appellee,

v.

MASOUD SHAKOORI-NAMINY,

Defendant - Appellant,

BRENDA SHAKOORI-NAMINY; SAND CANYON CORPORATION; WILMINGTON TRUST, NA, as Successor Trustee to Citibank, N.A., as Trustee for Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed Certificates, Series 2007-SV1; HERITAGE CONCRETE CORP.; FIREPLACE LLC; STEPHEN E. MOTTAU; HALLINAN CAPITAL CORPORATION; SAND CANYON CORPORATION,

Defendants

On Appeal from a Final Judgment Entered After an Opinion and Order Granting A Declaratory Judgment and denying a Motion in Limine and for Sanctions and a Motion to Alter and Amend Judgment

Entered in the United States District Court for the District of Rhode Island

## ADDENDUM TO BRIEF OF APPELLANT
## MASSOUD SHAKOORI NAMINY

John B. Ennis                                        February 18, 2024

Rhode Island Bar # 2135

Court of Appeals Bar # 47641

John B. Ennis, Esq.

1200 Reservoir Avenue

Cranston, RI 02920

Tel: (401)943-9230

Fax: (401)679-0035

Email: Jbelaw75@gmail.com

TABLE OF CONTENTS OF  ADDENDUM

Table of Contents                                             i

Order and Findings of Fact and Conclusions of Law            1

Judgment for Plaintiff                                       26

Memorandum and Order                                         28

Notice of Appeal                                             42

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
                                         )
U.S. BANK N.A., as Trustee for the )
Registered Holders of the               )
Structured Asset Securities             )
Corporation, Structured Asset           )
Investment Loan Trust,                   )
Mortgage Pass-Through                    )
Certificates, Series 2003-BC11,          )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )   C.A. No. 17-394 WES
                                         )
MASOUD SHAKOORI-NAMINY a/k/a             )
MASOUD SHAKOORI, BRENDA                  )
SHAKOORI-NAMINY, and SAND CANYON         )
CORPORATION,                             )
                                         )
          Defendants.                    )
                                         )
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM E. SMITH, District Judge.

This matter came before the Court for a bench trial in April 2022. Plaintiff U.S. Bank N.A. asks the Court to find that it is the holder of Defendant Masoud Shakoori-Naminy's mortgage by equitable assignment so that it may pursue a foreclosure on Defendant's property in Exeter, Rhode Island. The trial, held over two days, featured testimony by Defendant himself, see Apr. 5 Tr. 33:16-17, and Plaintiff's witness Howard Handville, a senior loan analyst at Ocwen Financial Corporation, see Apr. 18 Tr. 2:20-24, 4:13-16.

Having considered the exhibits, witness testimony, and the parties' written submissions, the Court concludes that Plaintiff is entitled to equitable assignment of the mortgage. Furthermore, Defendant's Motion in Limine and Motion for Default Judgment and Sanctions, ECF No. 57, is GRANTED IN PART and DENIED IN PART, and Defendant's Motion in Limine, ECF No. 58, is DENIED.

I.   Findings of Fact[1]

A. Origination and Modification of Mortgage Loan

On December 26, 2000, Defendant purchased property located at 1541 Ten Rod Road in Exeter, Rhode Island ("the property"). PXA. On November 5, 2001, he obtained a loan from Finance America, LLC, in the amount of $243,750, secured by a mortgage on the property. PXB; Apr. 5 Tr. 35:3-37:19.

On July 16, 2003, Defendant obtained a $315,400 loan ("the loan") from Option One Mortgage Corporation ("Option One") and executed an Adjustable Rate Note ("the note") payable to Option One on the same day. PXC; Apr. 5 Tr. 39:1-7, 47:15-16, 48:24-49:25. Defendant's initials appear on the first two pages of the note, and his signature appears on the third page. PXC; Apr. 5 Tr. 40:3-17. Attached to the note is an allonge[2] also dated July

---

[1] Some facts not presented in this section are reserved for later discussion and incorporated as additional findings of fact.

[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further

16, 2003, that contains an indorsement in blank[3] signed by Mary
Conway, Assistant Secretary of Option One.   PXC.   Neither
Defendant's initials nor his signature appear on the allonge, and
he testified that the allonge was not attached to the note when he
signed it.   Id.; Apr. 5 Tr. 46:10-16.

Defendant also executed a mortgage ("the mortgage") on the
property to secure the loan.   PXD; Apr. 5 Tr. 49:20-24.   Option
One was the holder of the mortgage, and the mortgage was recorded
in the Town of Exeter Land Evidence Records.   PXD; Apr. 5 Tr. 39:1-
4.

From the proceeds of the loan, $248,054.40 was paid to Finance
America, LLC, extinguishing Defendant's liability on his earlier
mortgage loan.   PXE; PXF; Apr. 5 Tr. 50:11-19.   The remaining
balance, $53,602.25, was paid to Defendant.   PXE; Apr. 5 Tr. 50:20-
22, 52:3-5.

In December 2008, after defaulting on the loan, Defendant
entered into a modification agreement with American Home Mortgage

---

indorsements when the original paper is filled with indorsements."
Note Cap. Grp., Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I.
2019) (quoting Black's Law Dictionary 92 (10th ed. 2014)).

   [3] "An [i]ndorsement in blank is one that does not identify a
person to whom it makes the instrument payable.   When indorsed in
blank, an instrument becomes payable to bearer and may be
negotiated by transfer of possession alone until specially
indorsed." Mruk v. Mortg. Elec. Reg. Sys., Inc., 82 A.3d 527, 530
n.3 (R.I. 2013) (internal citations and quotations omitted).

Servicing, Inc. ("AHMSI"), which was the servicer for the loan at the time. PXQ; Apr. 5 Tr. 56:12-17, 59:3-9. Following the modification, Defendant resumed making payments to AHMSI for an unknown amount of time, but, as of the time of this trial, had not made any mortgage payments in over ten years. Apr. 5 Tr. 63:18-22, 65:14-16.

B. Defendant's Bankruptcy

Between 2008 and 2015, Defendant filed three bankruptcy petitions in the United States Bankruptcy Court for the District of Rhode Island ("Bankruptcy Court").[4] PXO; PXT; PXU; PXBB. On December 31, 2015, in connection with his third petition, the Bankruptcy Court issued a Chapter 7 discharge of all debts. PXDD; see Apr. 5 Tr. 104:14-19.

II. Conclusions of Law

A. Equitable Assignment of Mortgage

"In Rhode Island, upon default in the performance of the mortgage, a mortgagee may conduct a foreclosure sale of the property by exercising the statutory power of sale contained in [R.I. Gen. Laws] § 34-11-22, so long as the mortgage contract itself gives the mortgagee the power to do so." Woel v. Christiana

---

[4] On the second petition, Defendant listed LaSalle Bank as a creditor, PXT, PXU, and on the third petition, he listed Ocwen Mortgage Company as a creditor, PXBB, both entities associated with the mortgage.

4

Tr. as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17, 228 A.3d 339, 344-45 (R.I. 2020). The parties do not dispute that Defendant's mortgage gives the mortgagee the power to foreclose. See PXD at 1. However, under the terms of the mortgage, this power is granted only to the lender, in this case Option One, and its "successors and assigns." Id. at ¶ 12. Therefore, to have the authority to conduct a foreclosure sale, Plaintiff must establish that it is either a successor or assignee of the original mortgagee through a valid chain of transfers or assignments of the mortgage, or that it is entitled to equitable assignment of the mortgage. Plaintiff pursues only the latter option and asks the Court to find that it is the holder of Defendant's mortgage by equitable

assignment.[5, 6]

### 1. Possession of Note

"[W]here a note has been assigned but there is no written

---

[5] In its Amended Complaint, Plaintiff asked the Court to find that it is entitled to equitable assignment of the mortgage <u>nunc pro tunc</u> as of either October 1, 2003, when the mortgage was purportedly securitized and deposited into trust, December 15, 2008, when AHMSI attempted to assign the mortgage to LaSalle Bank, or February 22, 2013, when LaSalle Bank attempted to assign the mortgage to Plaintiff as Trustee.   Am. Compl. ¶ 77, ECF No. 26. Plaintiff has presented no evidence that it was the holder of the note on any of these dates.   "Because U.S. Bank fails to cite authority in support of its position and provides no explanation for its request, the [C]ourt sees no reason . . . to allow the . . . equitable assignment nunc pro tunc."   U.S. Bank Tr. N.A. v. Bedard, No. 18-cv-30033-MGM, 2018 WL 6682836 at *2 n.2 (D. Mass. Dec. 4, 2018), <u>adopted</u> 2018 WL 6682769 (D. Mass. Dec. 19, 2018).

[6] Although Plaintiff does not ask the Court to find that it is the holder of the mortgage on the basis of title, Plaintiff nonetheless presented numerous exhibits at trial, including assignment agreements (PXG and PXH), trust documents (PXI and PXM), and a loan schedule (PXK) in an attempt to demonstrate that it "is the current holder of the mortgage loan" by virtue of its position as trustee of the trust into which the mortgage has been deposited. Apr. 5 Tr. 4:6-10.   In a claim for equitable assignment of a mortgage, a plaintiff need only prove that it is the holder of the note and entitled to enforce it; if a plaintiff is able to prove that it is the holder of the mortgage, there is no need for an equitable assignment.   <u>See</u> discussion <u>infra</u>.
     Even if these exhibits were relevant, they are not helpful to Plaintiff's case.   Although the assignment agreements evidence assignments between various entities that purportedly held the mortgage, the exhibits do not show that the original mortgagee, Option One, ever assigned the mortgage to any other entity.   "Thus, based on the documents submitted . . . Option One, not U.S. Bank, [is] the mortgage holder."   <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, 941 N.E.2d 40, 52 (Mass. 2011) (concluding that because of gap in chain of assignments, plaintiff failed to establish that it held mortgage).
     Defendant filed two Motions in Limine challenging the admission of these exhibits on the grounds of voidness of the

assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 54 (Mass. 2011).[7] Instead, the holder of a promissory note has an equitable right to obtain the assignment of the mortgage under the doctrine of equitable assignment.[8]  Id. at 54; see also Culhane v. Aurora Loan

_____

assignments, Def.'s Mot. Lim. & Mot. Default J. 7-10, ECF No. 57, lack of authentication, Def.'s Mot. Lim. 2-6, ECF No. 58, and hearsay, id. at 6, and he renewed these objections at trial. Apr. 18 Tr. 68:5-18, 77:18-19. Because the exhibits are ultimately irrelevant to the outcome of this case, Defendant's Motions in Limine, ECF Nos. 57 and 58, insofar as they concern Exhibits G, H, I, K, and M, are DENIED as MOOT.

Plaintiff also introduced evidence concerning Defendant's three bankruptcy petitions, asserting that because he listed LaSalle Bank and Ocwen Mortgage Company as creditors, this evidence "demonstrate[s] that Mr. Shakoori himself . . . has acknowledged and admitted" that these entities were the holder or servicer of the mortgage when the petitions were filed. Apr. 5 Tr. 8:13-9:5. Because the holder of the mortgage is irrelevant in a claim for equitable assignment, this evidence is similarly unhelpful.

[7] The Rhode Island Supreme Court has cited to and relied upon the Massachusetts Supreme Judicial Court's ("SJC") decision in Ibanez specifically, see, e.g., Pimental v. Deutsche Bank National Trust Co., 174 A.3d 740, 744 (R.I. 2017), and on SJC cases more broadly concerning mortgage and foreclosure disputes, see Woel v. Christiana Trust, 228 A.3d 339, 346-47 (R.I. 2020) (relying on Pinti v. Emigrant Mortgage Co., 33 N.E.3d 1213 (Mass. 2015), as "instructive" on foreclosure issue); Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1085 (R.I. 2013) (relying on Eaton v. Fed. National Mortgage Ass'n, 969 N.E.2d 1118 (Mass. 2012), regarding right to foreclose). Following that practice, the Court likewise relies on Ibanez for guidance on equitable assignment.

[8] If the holder of the note does not obtain an equitable assignment of the mortgage from a court (or a valid written assignment), the "the mortgage holder remains unchanged" and the

Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013) (when mortgage
and note are held by separate entities, "[t]he noteholder possesses
an equitable right to demand and obtain an assignment of the
mortgage.   This makes perfect sense:   if the debtor-mortgagor
defaults, the noteholder needs to control the mortgage in order to
enforce its bargained-for security interest and collect the debt."
(internal citation omitted)).    The party seeking equitable
assignment of the mortgage must file an action in court for an
equitable order of assignment.   Ibanez, 941 N.E.2d at 53.   The
party must also be entitled to enforce the note under the Uniform
Commercial Code.   See R.I. Gen. Laws § 6A-3-301 (2000).   To
demonstrate such an entitlement, the party must prove that they
are either (i) the holder of the note, (ii) a non-holder of the
note but nonetheless in possession, or (iii) a person or entity
not in possession of the note but nonetheless entitled to enforce
it.   Id.   See Lister v. Bank of Am., N.A., 8 F. Supp. 3d 74, 80
(D.R.I. 2014) ("[M]ere possession of the note may entitle that
person to enforce the terms and conditions contained within the
note" under § 6A-3-301.).

At trial, Plaintiff presented evidence demonstrating that it
is the holder of the note.   Specifically, it presented the original

---

mortgagee "holds the mortgage in trust for the purchaser of the
note."   Ibanez, 941 N.E.2d at 54.

note, which was authenticated by Defendant through his testimony
that the document appeared to be the original note and that he
recalled signing it. See PXC; Apr. 5 Tr. 39:17-19, 46:19-25. The
allonge, which includes an indorsement in blank, was attached to
the note, and the allonge was authenticated through Handville's
testimony. See PXC; Apr. 18 Tr. 87:24-90:6. Handville also
testified to the loan servicer's maintenance of promissory notes
in "collateral files," the general process of transferring such
files from the document custodian to the servicer and to counsel,
and the specific transfer of the original note that occurred in
this case to Plaintiff's counsel. Apr. 18 Tr. 90:7-93:16. This
evidence is sufficient to establish that Plaintiff is the holder
of the note.

2. Enforcement of Note

Defendant claims, however, that even if Plaintiff is the
holder of the note, the note is unenforceable due to a defective
indorsement. An indorsement is "a signature . . . for the purpose
of (i) negotiating the instrument, (ii) restricting payment of the
instrument, or (iii) incurring indorser's liability on the
instrument." R.I. Gen. Laws § 6A-3-204(a). If an indorsement
does not identify a person to whom it makes the instrument payable,
it is a "blank indorsement." R.I. Gen. Laws § 6A-3-205(b). "When
indorsed in blank, an instrument becomes payable to bearer and may

9

be negotiated by transfer of possession alone." Id.  See Mruk v.

Mortg. Elec. Reg. Sys., Inc., 82 A.3d 527, 530 n.3 (R.I. 2013).

Therefore, the entity that holds a note that has been indorsed in

blank has the right to enforce the note.

The signature need not be on the instrument itself for the

indorsement to be effective.  Under Rhode Island law, "[f]or the

purpose of determining whether a signature is made on an

instrument, a paper affixed to the instrument is a part of the

instrument." R.I. Gen. Laws § 6A-3-204(a).  This affixed paper is

known as an "allonge."  See Note Cap. Grp. V. Perretta, 207 A.3d

998, 1000 n.4 (R.I. 2019) (quoting Black's Law Dictionary 92 (10th

ed. 2014)); see also supra at note 2.

Defendant asserts two arguments for the invalidity of the

note: first, that the allonge containing the indorsement in blank

was not affixed to the note at the time of signing, see Apr. 5 Tr.

19:9-20:16, and second, that the indorsement occurred before the

three-day right of rescission passed and is therefore void or

voidable, see Apr. 5 Tr. 21:12-24:3.   Neither argument is

availing.[9]

Relying on the definition of "allonge" provided by the Rhode

_____

[9] A third argument asserted by Defendant is that Mary Conway,
whose signature appears on the allonge, was an employee of Option
One in its Tampa, Florida office and was not in Rhode Island on
the day that the note and allonge were purportedly signed.  See

Island Supreme Court in <u>Perretta</u>, Defendant asserts that the allonge must be affixed to the note before the signature is placed on the allonge. <u>See</u> Apr. 5 Tr. 20:2-5. The sole evidence presented at trial as to whether the allonge was affixed to the note, other than the note itself with the allonge attached, was Defendant's testimony. Defendant stated that he had never seen the allonge to the note, and that he did not see the allonge when he signed the note. Apr. 5 Tr. 46:10-18.

"The Court's independent research identifies no [Rhode Island] or [First] Circuit authority establishing the method of attachment necessary to create an effective [i]ndorsement" by allonge, <u>Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC</u>, 717 F. Supp. 2d 724, 734 (E.D. Mich. 2010), and identifies no authority establishing when the allonge must be attached to the note to create an effective indorsement. Regardless, even if the allonge was not physically attached to the note at or soon after execution, courts faced with similar questions have held that so long as "information on [the] allonge indicates an intent to serve as an [i]ndorsement of the . . . note," the indorsement is effective. <u>Kohler v. U.S. Bank Nat. Ass'n</u>, No. 11-C-0893, 2013 WL 3179557 at *5 (E.D. Wis. June 21,

---

Apr. 5 Tr. 20:22-21:7. Defendant presented no evidence to support this argument, so the Court rejects it.

2013). Where "the allonge[] presented to the Court w[as] attached to the [n]ote" and where the allonge makes unambiguous reference to the note, "given the clear intent that the [n]ote and [a]llonges were to be physically attached, the evidence is insufficient to invalidate the [i]ndorsement[]." Livonia Prop. Holdings, 717 F. Supp. 2d at 734 (applying Michigan statute identical in relevant part to R.I. Gen. Laws § 6A-3-204(a)).

Here, the allonge was attached to the original note that was presented to the Court, and the allonge references the note by listing the borrower's name, loan number, property address, loan amount, note date, and servicing number. See PXC. Therefore, the evidence presented by Plaintiff is sufficient to validate the indorsement.[10]

Defendant also asserts that the note is void or voidable because the indorsement occurred before the conclusion of the

---

[10] The legislative history of Rhode Island's statute supports this conclusion. The final sentence of R.I. Gen. Laws § 6A-3-204(a), stating that "a paper affixed to the instrument is part of the instrument," was added to the statute in 2000, see P.L. 2000, ch. 238, § 3, and was "based on subsection (2) of former Section 3-202." R.I. Gen. Laws § 6A-3-204(a), cmt. 1. Prior to the amendment, § 3-202 mandated that "[a]n indorsement must be written . . . on the instrument or on a paper so firmly affixed thereto as to become a part thereof." R.I. Gen. Laws § 6A-3-202 (1999). "The change in language suggests an intent to expand, rather than restrict, the use of allonges." Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 717 F. Supp. 2d 724, 734 n.10 (E.D. Mich. 2010).

12

three-day rescission period. See Apr. 5 Tr. 21:12-24:9. The Truth in Lending Act, 15 U.S.C. § 1601 et seq., provides a right of rescission for a consumer entering into "any consumer credit transaction. . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of" the consumer. 15 U.S.C. § 1635(a). The consumer "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction." Id. "When an obligor exercises his right to rescind . . . any security interest given by the obligor . . . becomes void." Id. § 1635(b). Defendant contends that because the allonge, dated July 16, 2003, was executed on the same day as the note, also dated July 16, 2003, the indorsement on the allonge could not be effective because the loan was not funded until the rescission period expired and, thus, there was no consideration for the note. See Apr. 5 Tr. 21:12-24:9.

Defendant's argument reflects a fundamental misunderstanding of a right of rescission. A right of rescission does not prevent a contract from forming until the expiration of the rescission period. Rather, it gives a party to the contract the ability to unmake the contract within the specified timeframe and return to the status quo ante. See In re Sheedy, 801 F.3d 12, 21 (1st Cir. 2015) (rescission "is the 'unmaking' or 'voidance' of a contract");

13

McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st
Cir. 2007) ("Rescission essentially restores the status quo ante;
the creditor terminates its security interest and returns any
monies paid by the debtor in exchange for the latter's return of
all disbursed funds or property interests.").    In addition,
Defendant has presented no evidence to support his assertion that
the loan was not funded until the expiration of the rescission
period and that there was no consideration for the note on the day
it was signed.     Therefore, because the three-day right of
rescission did not prevent the contract from being formed or the
loan from being funded, it is not a basis on which to invalidate
the indorsement.

3. Equitable Factors

The final inquiry as to whether Plaintiff is entitled to
equitable assignment of the mortgage is balancing the equitable
factors.  The determination of whether to grant equitable relief
rests within the discretion of the trial judge.  Ruggieri v. City
of East Providence, 593 A.2d 55, 57 (R.I. 1991).  A trial judge's
determination should be guided by "basic principles of equity and
justice," should balance the equities by "weighing hardships to
either side," and should only grant relief in the absence of an
adequate legal remedy.  Chavers v. Fleet Bank (RI), N.A., 844 A.2d

14

666, 679 (R.I. 2004).

The decision to grant equitable assignment of the mortgage to Plaintiff does not result in unfair hardship to Defendant. Defendant has lived on the property without making payments on his mortgage for at least ten years. Apr. 5 Tr. 65:14-16. The Court "echo[s] the First Circuit's language to describe the necessary outcome in this situation: 'the piper must be paid.'" Pimentel v. Deutsche Bank Nat'l Tr. Co., 174 A.3d 740, 745-46 (R.I. 2017) (quoting Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 353 (1st Cir. 2015)). In addition, because Plaintiff is unable to demonstrate that it is the holder of the mortgage by chain of title, see supra at note 6, there is no adequate legal remedy. See Chavers, 844 A.2d at 679. Therefore, because Plaintiff is the holder of the note, the indorsement on the note is effective, equitable assignment of the mortgage to Plaintiff will result in no unfairness to Defendant, and there is no adequate legal remedy, Plaintiff is entitled to equitable assignment of the mortgage.[11]

B. Defendant's Motions in Limine

The Court next addresses the remaining issues in Defendant's

---

[11] Although the equitable assignment of the mortgage to Plaintiff will enable it to foreclose on the property, Defendant is not personally liable for the outstanding balance of the loan because his debt was discharged after his third bankruptcy petition. See PXDD.

15

Motions in Limine.[12]  Defendant's first motion seeks to preclude Plaintiff from asserting certain arguments that contradict statements in Defendant's request for admissions; Defendant contends that these statements should be deemed admitted because Plaintiff failed to timely respond to the request for admissions. Def.'s Mot. Lim. & Mot. Default J. ("Def.'s First Mot. Lim.") 3, 10, ECF No. 57.  The motion also requests sanctions against Plaintiff for failing to timely respond and providing deficient answers to interrogatories.  Id. at 15-28.  Defendant's second motion seeks to preclude the admission of certain of Plaintiff's exhibits on the grounds of lack of authentication, hearsay, and inaccuracy. Def.'s Mot. Lim. ("Def.'s Second Mot. Lim") 2, 6, ECF No. 58.[13]

### 1. Request for Admissions

Defendant asserts that his request for admissions were transmitted to Plaintiff's counsel on May 19, 2018, and that because the request was not responded to within the thirty days

---

[12] See supra at note 6 regarding the disposition of the other issues in Defendant's motions in limine.

[13] The motions challenge thirteen exhibits in total.  Six of these exhibits (exhibits J, L, EE, FF, GG, and HH) were not introduced by Plaintiff at trial.  Insofar as Defendant's motions challenge these exhibits, they are DENIED as MOOT.  In addition, while both motions list the note (PXC) as an exhibit that should be excluded, neither make an argument as to why.  Therefore, insofar as the motions concern this exhibit, they are DENIED.

allotted under Rule 36(a) of the Federal Rules of Civil Procedure, all statements contained therein should be deemed admitted. Def.'s First Mot. Lim 3. Plaintiff does not dispute that it failed to timely respond to Defendant's request for admission but asserts that any delay in the responses stemmed from a good faith and extended effort to settle the case. See Pl.'s Resp. Def.'s Mot. Lim. ("Pl.'s First Resp.") 2, ECF No. 60.

"Under Federal Rule of Civil Procedure 36(a), after a party serves a written request for admission, '[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." Foss v. Marvic Inc., 994 F.3d 57, 63 (1st Cir. 2021) (quoting Fed. R. Civ. P. 36(a)). "A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). "District courts have considerable discretion over whether to permit withdrawal or amendment of admissions made pursuant to Rule 36." Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 876 (1st Cir. 1990). Here, however, Plaintiff has not moved to withdraw the admissions. Therefore, insofar as Defendant's First Motion in Limine requests that these statements be admitted, the motion is GRANTED.

However, the statements have little effect on the case. Of

17

the forty-five admitted statements, forty-one pertain to the mortgage, assignments of the mortgage, and the trust in which the mortgage is purportedly held. Because the assignments of the mortgage are irrelevant in a claim for equitable assignment, their admission does not materially affect the outcome of this case.

The four remaining statements pertain to the note:

1. On December 15, 2008, Option One was not owed any indebtedness under the Defendant's note.
2. On December 15, 2008, Option One did not own Defendant's note.
. . .
25. On December 15, 2008 Sand Canyon did not own Defendant's note.
. . .
29. La Salle Bank as Trustee never purchased Defendant's note from Sand Canyon at any time.

Def.'s First Mot. Lim. 3-5. However, these statements also do not materially affect the outcome of this case. In order to establish ownership of the note, a party is not required to demonstrate the chain of title to the note; it need only show that it holds the note and is entitled to enforce it, which Plaintiff has done here by presenting the original note that is indorsed in blank. See discussion supra. Therefore, whether any of the entities mentioned in these statements were owed debt on the note, owned the note, or transferred the note at any point prior to Plaintiff's possession of the note is inconsequential to Plaintiff's present ownership of

18

the note.

### 2. Discovery Sanctions

Defendant next asserts that sanctions in the form of dismissal or exclusion of evidence should be imposed against Plaintiff for its deficient discovery responses. See Def.'s First Mot. Lim. 15-28. Specifically, Defendant contends that Plaintiff failed to respond to Defendant's request for interrogatories for three years, id. at 13, and that when it did, the responses suffered from various deficiencies.[14] In addition, Defendant contends that Plaintiff failed to provide him with documents concerning the securitization of the mortgage, id. at 18-20, 26-27, 29-31, and that he was not provided with documents regarding the custodian or travel of the note and allonge, id. at 32-33.

Because the evidence that Defendant requests be excluded due to Plaintiff's deficient discovery responses was either not admitted, see supra at note 13, or was ultimately irrelevant to the equitable assignment claim, see supra at note 6, the Court considers only Defendant's request for dismissal of Plaintiff's

---

[14] These deficiencies include failure to identify persons with whom the answerer consulted, Def.'s First Mot. Lim. 15, answers that are inconsistent with the Complaint, id. at 16, 26-27, answers that are inconsistent with Plaintiff's proposed findings of fact, id. at 17-18, 26-28, answers that constitute vouching for fraudulent and void assignments, id. at 17, and deliberate refusal to provide information, id. at 19.

claim.  Rule 37 of the Federal Rules of Civil Procedure provides
a mechanism for parties to move to compel discovery responses and
also provides for sanctions if a party does not comply with a
discovery order issued by the court or fails to provide answers to
interrogatories.  Fed. R. Civ. P. 37(a), (b), (c), (d).  These
sanctions can include dismissal of the case.  See Fed. R. Civ. P.
37(b)(2)(A)(v), (c)(1)(C), (d)(3); Companion Health Servs., Inc.
v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012).  "Dismissal . . . is a
harsh sanction, which should be employed only when a plaintiff's
misconduct has been extreme . . ."  Malot v. Dorado Beach Cottages
Assocs., 478 F.3d 40, 44 (1st Cir. 2007) (citation omitted).  The
First Circuit has "recognized a number of litigation behaviors
that  comprise  'extreme  misconduct'  warranting  dismissal,"  in
particular, "extremely protracted inaction (measured in years),
disobedience  of  court  orders,  ignorance  of  warnings,  [and]
contumacious  conduct."  Vazquez-Rijos v. Anhang, 654 F.3d 122,
127-28 (1st Cir. 2011) (quoting Cosme Nieves v. Deshler, 826 F.2d
1, 2 (1st Cir. 1987)).

Plaintiff's  conduct  here  does  not  constitute  "extreme
misconduct."  Although Defendant alleges that Plaintiff failed to
respond to interrogatories for three years, see Def.'s First Mot.
Lim. 13, this delay does not constitute "protracted inaction."
Rather, the delay is attributable to the parties' ongoing efforts

20

to settle the case.  In addition, Defendant has not demonstrated that Plaintiff disobeyed a court order, ignored warnings, or acted with disregard for authority.  See Vazquez-Rijos, 654 F.3d at 127-28 (failure to serve defendant for three years plus ignoring court orders and warnings warranted sanction of dismissal).  Therefore, dismissal is not an appropriate sanction in this case, and Defendant's motion, insofar as it requests dismissal, is DENIED.

3. Remaining Challenge to Evidence

All but one of the evidentiary issues raised by Defendant have been rendered moot, either because the exhibits he challenges are irrelevant to the issue of equitable assignment, see supra at note 6, or because Plaintiff did not introduce the exhibits at trial, see supra at note 13.  The remaining exhibit challenged by Defendant is the Loan Payment History of Defendant's loan.  See PXR.  Defendant argues that the Loan Payment History should not be admitted because it is inaccurate; the document consists of information from four loan servicers of Defendant's loan, and at least one servicer has admitted in other proceedings that its electronic system of record is not accurate.  Def.'s Second Mot. Lim. 9-10.

Plaintiff's introduction of this exhibit and Handville's accompanying testimony served primarily to establish that Defendant's loan has been in default since 2011 based on a failure

21

to make monthly mortgage payments. Apr. 18 Tr. 86:5-18. However, regardless of whether the Loan Payment History is accurate, Defendant admitted as much in his own testimony, stating that he had not made a payment on his mortgage loan in at least ten years and acknowledging that payments are still owed until August 1, 2033, the final payment date listed on the note. Apr. 5 Tr. 42:3-11, 65:14-16; PXC. Therefore, even declining to consider the Loan Payment History, the evidence is sufficient to establish that Defendant is in default on the loan, and Defendant's Motion in Limine, ECF No. 58, is DENIED insofar as it concerns Exhibit R.

C. Attorney's' Fees

Finally, Plaintiff argues that it is entitled to an award of attorneys' fees under the terms of the mortgage. Pl.'s Proposed Concl. Law ¶¶ 11-12, ECF No. 53.

Evaluating the clear and unambiguous terms of a contract is a question of law. Under Rhode Island law, a contract term "is ambiguous when it is reasonably and clearly susceptible to more than one rational interpretation." Woel, 228 A.3d at 345. In evaluating whether the contract language is ambiguous, courts "give words their plain, ordinary, and usual meaning." Id.

While Plaintiff is correct that the terms of the mortgage are unambiguous, it is incorrect about what the mortgage unambiguously says. Plaintiff asserts that the sixth paragraph of the mortgage

22

entitles it to an award of attorneys' fees.[15]   See Pl.'s Proposed
Concl. of L. 12.   The clause of paragraph six relevant to costs
and fees is applicable to three scenarios.   First, it dictates
that the borrower shall "appear in and defend any action or
proceeding purporting to affect the property or any portion thereof

---

[15] The relevant clause of paragraph six provides, in full:

Borrower shall, at Borrower's own expense, appear
in and defend any action or proceeding purporting to
affect the property or any portion thereof or Borrower's
title thereto, the validity or priority of the lien
created by this Security Instrument, or the rights or
powers of Lender with respect to this Security
Instrument or the property.   All causes of action of
Borrower, whether accrued before or after the date of
this Security Instrument, for damage or injury to the
Property or any part thereof, or in connection with any
transaction financed in whole or in part by the proceeds
of the Note or any other note secured by this Security
Instrument, by Lender, or in connection with or
affecting the Property or any part thereof, including
causes of action arising in tort or contract and causes
of action for fraud or concealment of a material fact,
are, at Lender's option, assigned to Lender, and the
proceeds thereof shall be paid directly to Lender who,
after deducting therefrom all its expenses, including
reasonable attorneys' fees, may apply such proceeds to
the sums secured by this Security Instrument or to any
deficiency under this Security Instrument or may release
any' monies so received by it or any part thereof, as
Lender may elect. Lender may, at its option, appear in
and prosecute in its own name any action or proceeding
to enforce any such cause of action and may make any
compromise or settlement thereof.   Borrower agrees to
execute such further assignments and any other
instruments as from time to time may be necessary to
effectuate the foregoing provisions and as Lender shall
request.

PXD at ¶ 6.

23

or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender[16] with respect to this Security Instrument or the property," at his own expense. Although this case does concern "the rights or powers of Lender with respect to this Security Instrument or the property," this sentence only mandates that the borrower pay his own costs, not that he must also pay the lender's costs or attorneys' fees. Second, the clause states that at the lender's option, all of the borrower's causes of action related to the property may be assigned to the lender, and the lender is entitled to pay its costs, including reasonable attorneys' fees, from the proceeds. This case was not a cause of action by the borrower that was assigned to the lender, so this scenario is inapplicable. Finally, the clause provides that the lender is entitled to "appear in and prosecute in its own name any action or proceeding to enforce any" of the borrower's causes of action, but this scenario makes no mention of an entitlement to attorneys' fees. Therefore, Plaintiff is not entitled to an award of

---

16 "Lender" as used in the mortgage also encompasses an assignee of the mortgage. See PXD at ¶ 12 ("The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . . .").

attorneys' fees under the language of the mortgage.[17]

III. Conclusion

For the foregoing reasons, Plaintiff is entitled to equitable assignment of the mortgage. Defendant's Motion in Limine and Motion for Default Judgment and Sanctions, ECF No. 57, is GRANTED IN PART and DENIED IN PART, and Defendant's Motion in Limine, ECF No. 58, is DENIED. Finally, Plaintiff's request for attorneys' fees is DENIED.

IT IS SO ORDERED.

William E. Smith
District Judge
Date: November 16, 2022

---

[17] Plaintiff has not suggested, and the Court has not identified, any other provisions of the mortgage that would entitle it to an award of attorneys' fees.

25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

U.S. BANK N.A., as Trustee for the
Registered Holders of the
Structured Asset Securities
Corporation, Structured Asset
Investment Loan Trust,
Mortgage Pass-Through
Certificates, Series 2003-BC11

      Plaintiff,

    v.

CA No. 17-cv-394-WES

MASOUD SHAKOORI-NAMINY a/k/a
MASOUD SHAKOORI, BRENDA
SHAKOORI-NAMINY, and SAND CANYON
CORPORATION

      Defendant.

## JUDGMENT

This action came to be heard before the Court and a decision
has been rendered. Upon consideration whereof, it is now hereby
ordered, adjudged, and decreed as follows:

Pursuant to this Court's Findings of Fact and Conclusions of
Law entered on November 16, 2022, and in accordance with Fed. R.
Civ. P. 58., judgment is entered in favor of Plaintiff, U.S. BANK
N.A., as Trustee for the Registered Holders of the Structured Asset
Securities Corporation, Structured Asset Investment Loan Trust,
Mortgage Pass-Through Certificates, Series 2003-BC11, and against

Defendants, Masoud Shakoori-Naminy a/k/a Masoud Shakooru, Brenda
Shakoori-Naminy, and Sand Canyon Corporation.

It is so ordered.

November 16, 2022                    By the Court:

                                     /s/ William E. Smith
                                     United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| U.S. BANK N.A., as Trustee for the Registered Holders of the Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2003-BC11,<br><br>Plaintiff,<br><br>v.<br><br>MASOUD SHAKOORI-NAMINY a/k/a MASOUD SHAKOORI, BRENDA SHAKOORI-NAMINY, and SAND CANYON CORPORATION,<br><br>Defendants. | C.A. No. 17-394 WES |

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court are two motions to alter judgment and for new trial, one filed by Defendant Masoud Shakoori-Naminy ("Shakoori"), ECF No. 90, and the other by Defendant Brenda Shakoori-Naminy ("Brenda"), ECF No. 102, both challenging the Court's ruling that Plaintiff U.S. Bank N.A. is entitled to equitable assignment of Defendants' mortgage. See Findings of Fact & Concl. of L., ECF No. 88. For the reasons that follow, Defendants' motions are DENIED.

I.    Standard of Review

Following a nonjury trial, a motion for new trial may be granted "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). The reason must be substantial; judgment will not be set aside unless there has been a manifest error of law or mistake of fact. Jackson v. United States, No. 08-40024-FDS, 2011 WL 6301425, at *3 (D. Mass. Dec. 15, 2011) (quoting Ball v. Interoceanica Corp., 71 F.3d 73, 76 (2d Cir. 1995)).

Similarly, a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) may be granted "only where the movant shows a manifest error of law or newly discovered evidence." Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008) (quoting Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007)). A court may properly deny a Rule 59(e) motion if the arguments asserted rely on evidence that could have been discovered earlier through the exercise of due diligence, are repeat arguments that were properly rejected, or could and should have been raised before judgment issued. See Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009).

2

27

II. Discussion[1]

    A. Shakoori's Motion for New Trial

    Shakoori seeks to amend the judgment or a new trial on the
grounds that the Court committed three manifest errors of law:
(1) that the indorsement of the promissory note ("note") was
invalid because there was no evidence that the allonge was affixed
to the note at the time it was executed, (2) that the testimony of
Howard Handville, a senior loan analyst at Ocwen Financial
Corporation ("Ocwen"), should not have been admitted under U.S.
Bank Trust v. Jones, and (3) that Plaintiff's admissions precluded
judgment. Def.'s Mem. Supp. Mot. New Trial & Alter & Amend J.
("Shakoori's Mem.") 2, 11, 21, ECF No. 90-1.

    1. Indorsement

    Shakoori first argues that Plaintiff failed to present
evidence that the allonge was affixed to the note at the time it
was executed and thus the indorsement of the note was invalid.
Shakoori's Mem. 1-10. No statute or case supports Shakoori's
position that an allonge must be attached to a promissory note at
the time the allonge is executed.

    First, Shakoori points to Rhode Island's Uniform Commercial
Code, which, in defining "indorsement," states that "a paper

_____

    [1] For a detailed recitation of the facts of the case, see
Findings of Fact & Concl. of L., ECF No. 88.

3

affixed to the instrument is a part of the instrument." Shakoori's Mem. 2 (quoting R.I. Gen. Laws § 6A-3-204). No part of this definition contains any requirement that the allonge be affixed to the note at the time of signature.

Shakoori next points to three Rhode Island Supreme Court ("RISC") cases, each of which defines "allonge." Shakoori's Mem. 4-5. In Note Capital Group, Inc. v. Perretta, 207 A.3d 998, 1000 n.4 (R.I. 2019), Pimentel v. Deutsche Bank National Trust Co., 174 A.3d 740, 742 n.4 (R.I. 2017), and Moura v. Mortgage Electric Registration Systems, 90 A.3d 852, 853 n.1 (R.I. 2014), the RISC referred to the definition of "allonge" from Black's Law Dictionary, which states that an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 92 (10th ed. 2014). Like the Rhode Island statute, these cases make no mention of when the allonge must be affixed to the note. In addition, the attachment of the allonge to the note was not at issue in these three cases,[2] and the RISC did not engage in any discussion on this

---

[2] In Note Capital Group, the Rhode Island Supreme Court concluded that the plaintiff could not foreclose on the defendant's property because there was insufficient proof to establish possession of the lost note. 207 A.3d at 1006. In Pimentel, the court affirmed summary judgment in favor of the foreclosing bank despite that the borrower submitted copies of unendorsed notes

4

issue other than to provide the definition. Rather than support for Shakoori's argument that the allonge must be affixed to the note at the time of signing, these cases bolster the conclusion that Plaintiff is entitled to equitable assignment of the mortgage because the evidence demonstrates a valid endorsement by allonge and present possession of the note.

Shakoori also points to several decisions outside of Rhode Island to argue that the allonge must be affixed to the note at the time of signature. Shakoori's Mem. 5-10. First, in In re Shapoval, 441 B.R. 392 (Bankr. D. Mass. 2010), the Massachusetts bankruptcy court determined that an evidentiary hearing was necessary to determine "whether the allonge was ever affixed to the note." Id. at 394. A similar question arose in In re Thomas, 447 B.R. 402, 411 (Bankr. D. Mass. 2011) ("Given that [Defendant] has produced two different copies of the note -- one with and one without the purported allonge -- the plaintiff argues that there is a question of fact as to whether the allonge is affixed to the

---

because the bank "provided a copy of the note with an allonge that demonstrate[d] that the note was endorsed, along with an affidavit attesting that it [held] the note." 174 A.3d at 746. Finally, in Moura, the court affirmed summary judgment in favor of the foreclosing bank because "[t]he evidence and supporting documents . . . established that [the plaintiff] signed the note, that the note was signed in favor of Accredited Home Lenders, which endorsed an allonge in blank, and that it was subsequently held by Vericrest Financial on behalf of Deutsche Bank." 90 A.3d at 746.

5

note . . .") and in <u>Adams v. Madison Realty & Development, Inc.</u>, 853 F.2d 163, 166 (3d Cir. 1988) ("We may assume . . . that the loose indorsement sheets accompanying [the] notes would have been valid allonges had they been stapled or glued to the note themselves."). Notably, however, these cases focus only on whether and how firmly the allonge is affixed to the note and make no mention of the timing of a signature on the allonge as a requirement for enforcement. Here, there is no dispute that the allonge is permanently affixed to the note and that Plaintiff is in possession of the note and allonge.

Finally, Shakoori argues that the Court erred in relying on <u>Livonia Property Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC</u>, 717 F. Supp. 2d 724 (E.D. Mich. 2010), and <u>Kohler v. U.S. Bank Nat'l Ass'n</u>, No. 11-C-0893, 2013 WL 3179557 (E.D. Wis. June 21, 2013), due to the factual differences between those cases and the present case. Both cases stand for the proposition that so long as the information on an allonge indicates an intent to serve as indorsement of the note, the allonge is effective. Here, review of the allonge affixed to the note evidences a clear and unambiguous intent to negotiate the agreement by an endorsement in blank. Thus, Shakoori's argument fails.

### 2. Handville's Testimony

Shakoori next challenges the admission of the testimony of

6

Howard Handville, a senior loan analyst at Ocwen, arguing that
Handville did not verify the boarding or verification of business
records as required by U.S. Bank Trust v. Jones, 925 F.3d 534 (1st
Cir. 2019). Shakoori's Mem. 11-21.

Federal Rule of Evidence 803(6) excludes from the definition
of hearsay records that are kept in the course of regularly
conducted business. Jones dictates that business records
"containing third-party entries without third-party testimony" may
be admitted if "the entries 'were intimately integrated' into the
business records." Jones, 925 F.3d at 537 (quoting FTC v. Direct
Mktg. Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010)). In
reaching this conclusion, the Jones court emphasized certain facts
elicited through the testimony of the loan servicer's witness: the
servicer "incorporated the previous servicer's records into its
own database," and the servicer's "acquisition department took
steps to review the [prior] servicer's records in a way that
assured itself of the accuracy of the records." Id. at 538
(quoting U.S. Bank Trust v. Jones, 330 F. Supp. 3d 530, 543 (D. Me.
2018)).

Here, Handville testified similarly to the witness in Jones,
explaining the multi-step process through which the records were
transferred from the original servicer to PHH Mortgage Corporation
and verified. Apr. 18 Tr. 9:12-15:4, ECF No. 76. Handville

7

further explained how Ocwen received the documents particular to Shakoori's loan through the merger with PPH Mortgage Corporation ("PHH") and how the documents were imported and verified, discussing the systems and processes used to integrate and review the loan records. Id. at 16:9-17:24. He explained that he reviewed the business records, including "origination documents, the HUD-1, the closing settlement statements, [and] collateral file documents such as the note [and] mortgage" in preparation for trial. Id. at 20:10-22. The substance of Handville's testimony demonstrated the integration of business records into those maintained by the current servicer as required by Jones.

Shakoori claims specifically that Handville could not explain how Ocwen's records were confirmed and verified when it merged with PPH. Shakoori's Mem. 10-11. However, Handville testified that when the servicers merged, all the data was transferred from the "REAL servicing mortgage platform" to the "Black Knight LoanSphere MSP" using the same process described in relation to the other transfers. Apr. 18 Tr. 19:2-18; 31:1-38:17. He further explained how Ocwen maintained loan documents in an image database called CIS, and how, after the merger with PHH, the documents were imported into a new repository called iDesk, including how Ocwen and PHH verified the accuracy of these records. Id. at 19:19-20:5.

8

Shakoori further argues that Handville's testimony violated the best evidence rule because Handville looked only at copies of the documents and did not know the location of the original documents.   Shakoori's Mem. 16-17.   Federal Rule of Evidence 1001(d) provides that a printout may constitute an original document for electronically stored information so long as the printout is an accurate reflection of that information. See Jones, 925 F.3d at 540.   Here, Handville's testimony demonstrated that the loan and trust documents were printed from electronic records maintained by PHH, explained the systems in place to search for documents, and detailed the process to review documents on PHH's internal Sharepoint website, which satisfies the requirements of Rule 1001(d).

Shakoori also argues that Handville could not authenticate the note.  However, Handville reviewed both the original collateral file containing the note and allonge and bailee letters that PHH and its counsel used to acknowledge transfer of the note from one entity or person to another, which suffices to authenticate the note.   Apr. 18 Tr. 86:19-95:14.   Further, even if Handville's testimony on this issue was deficient, Shakoori himself authenticated the note through his own testimony. Apr. 5 Tr. 38:5-39:9, ECF No. 75.

9

### 3. Plaintiff's Admissions

Shakoori argues that the Court committed manifest error of law by not accepting as admitted the facts in his request for admissions. Shakoori's Mem. 21-28. This argument fails because the Court in fact granted Shakoori's motion and admitted all facts contained in the request for admissions. See Findings of Fact & Concl. of L. 17. As explained in the Findings of Fact and Conclusions of Law, the admitted facts had little, if any, effect on the case because most pertained to assignments of the mortgage, which are not relevant to a claim of equitable assignment. Id. at 17-18. Those admitted facts that pertained to the note were also inconsequential because Plaintiff was required to prove only that it holds the note and was entitled to enforce it, which it did by presenting the original note indorsed in blank and authenticated by the testimony of both Shakoori and Handville. Id.

### 4. Sanctions

Finally, Shakoori argues that the Court committed manifest error by not imposing sanctions on Plaintiff for failing to respond to discovery requests and presenting evidence contrary to its responses. Shakoori's Mot. 28. The evidence that, Shakoori contends, forms the basis for sanctions was ultimately not admitted or deemed irrelevant, which undermines Shakoori's request for sanctions. See Findings of Fact & Concl. of L. 19. Shakoori has

10

not identified any other conduct that would justify the imposition of sanctions on Plaintiff.

Accordingly, Shakoori's Motion for New Trial is DENIED.

B. Shakoori's Motion to Alter Judgment

As discussed above, Shakoori's arguments simply rehash positions that he pressed in pretrial filings, throughout the trial, and in post-trial briefs. Thus, no relief under Rule 59(e) is available because the arguments were already presented to and properly rejected by the Court. See Yeomalakis, 562 F.3d at 61. Accordingly, Shakoori's Motion to Alter Judgment is DENIED.

C. Brenda Shakoori-Naminy's Motion for New Trial

Defendant Brenda Shakoori-Naminy, wife of Shakoori, filed her own motion for new trial, ECF No. 102, asserting several reasons why a new trial is warranted in this case. The Court addresses her arguments in turn.

1. Ability to Present Defense

Brenda first makes a variety of arguments related to the circumstances at trial and her ability to present a defense, including that the COVID protocols in place at the time were prejudicial to Defendants and that her attorney failed to appear. Def.'s Mot. New Trial ("Brenda's Mot.") 1-2, ECF No. 102. She does not, however, identify any arguments that she was precluded from making that could have changed the outcome of the case that

11

were not already put forth by Shakoori's attorney, nor has she identified any specific prejudice that resulted from her inability to present these arguments.

### 2. Bankruptcy Filings

Next, Brenda takes issue with the admission of documents pertaining to Shakoori's bankruptcy because they were made by Attorney Dawn Thurston who was later suspended for misconduct. As discussed in the Findings of Fact and Conclusions of Law, this case ultimately rested upon Plaintiff's ability to prove that it was the holder of the note and entitled to enforce it, which it did successfully. Findings of Fact & Concl. of L. at 8. Shakoori's bankruptcy proceedings were irrelevant to this conclusion, other than to demonstrate that he would not be personally liable for the outstanding balance on the loan because his debt was discharged. See id. at 15 n.11. Because the documents that Brenda challenges did not influence the outcome of the case, this argument is without merit.

### 3. Movement of Case

Next, Brenda argues that the fact that Defendants have not made payments on the mortgage in ten years should not count against them. She asserts that the delay in payments was due to the slow movement of the case through the judicial process over which Defendants had no control. Def.'s Mem. 7-8. Defendants last made

12

a payment on the mortgage over ten years before the commencement of this trial. Findings of Fact & Concl. of L. at 4. This lawsuit was filed in 2017, at least four years after the last payment. Thus, Brenda's assertion that the nonpayment was due to the movement of the case through the judicial system does not apply to a significant portion of the missed payments, and this argument is not a basis on which to grant a new trial.

### 4. Mortgage

Finally, Brenda makes four challenges related to the mortgage. She argues that the high-interest refinance that was issued to Shakoori in 2000 should be declared void because he should not have qualified for such a high interest rate, Brenda's Mot. at 2-3, that Plaintiff does not meet the requirements set forth in General Laws § 6A-3-302 for a holder in due course of the mortgage, Brenda's Mot. at 5-6, that a settlement reached with the Lehman Brothers estate concerning improper depositing of mortgages into real estate mortgage investment conduits has already made Plaintiff whole vis-a-vis Defendants' mortgage, id. at 6-7, and that the assignments of the mortgage were fraudulent, id. at 9. Because this is a case for equitable assignment and the outcome depended only upon Plaintiff demonstrating that it is the holder of the note and entitled to enforce it, evidence concerning the mortgage itself is irrelevant. See Findings of Fact & Concl. of

13

*L.* at 6-7 n.6. Thus, even if Brenda's assertions concerning the mortgage are correct, these arguments do not warrant a new trial.

III. Conclusion

For the foregoing reasons, Defendant Masoud Shakoori-Naminy's Motion to Alter Judgment and for New Trial, ECF No. 90, and Defendant Brenda Shakoori-Naminy's Motion for New Trial, ECF No. 102, are DENIED.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
District Judge
Date:  May 3, 2023

14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

US Bank N.A. as Trustee
_____

        Plaintiff

    v.

Masoud Shakoori-Naminy et al
_____

        Defendant

Case No. **17-cv-394**

### NOTICE OF APPEAL

Notice is hereby given that **Masoud Shakoori-Naminy** ,
Name

the **Defendant** in the above-referenced matter, hereby appeals to the United States
Party Type

Court of Appeals for the First Circuit from the:

▓ Final judgment entered on **11-16-2022** .
Date of Judgment

and/or

▓ The order Denial of Motion to Alter Judgment and for New Trial entered on **05-03-2023** .
Description of Order                                  Date of Order

**John B. Ennis**
_____
Name

**2135**
_____
Bar Number

John B. Ennis, Esq.
_____
Firm/Agency

1200 Reservoir Avenue
_____
Address

**Cranston RI 02920**
_____
City/State/Zip Code

Respectfully submitted,

/s/ John B. Ennis
_____
Signature

**May 27, 2023**
_____
Date

**(401)943-9230**
_____
Telephone Number

jbelaw75@gmail.com
_____
Email Address

Reset Form        Print Form        Save Form

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

US Bank N.A. as Trustee
_____

              Plaintiff

     v.                                          Case No. **17-cv-394**
                                                         _____

Masoud Shakoori-Naminy et al
_____

              Defendant

## NOTICE OF APPEAL

Notice is hereby given that **Masoud Shakoori-Naminy**                  ,
                                              Name

the **Defendant**      in the above-referenced matter, hereby appeals to the United States
      Party Type

Court of Appeals for the First Circuit from the:

☑ Final judgment entered on **11-16-2022**         .
                              Date of Judgment

                              and/or

☑ The order   Denial of Motion to Alter Judgment and for New Trial   entered on **05-03-2023**
                    Description of Order                                        Date of Order

                                         Respectfully submitted,

**John B. Ennis**                        /s/ John B. Ennis
_____                  _____
Name                                     Signature
**2135**                                 **May 27, 2023**
_____                  _____
Bar Number                               Date
John B. Ennis, Esq.                      **(401)943-9230**
_____                  _____
Firm/Agency                              Telephone Number
1200 Reservoir Avenue                    jbelaw75@gmail.com
_____                  _____
Address                                  Email Address
Cranston RI 02920
_____
City/State/Zip Code

[Reset Form]              [Print Form]              [Save Form]

41